721 P.2d 1166

**Ann Carol TOMASITS, Plaintiff/Appellee,**

v.

**COCHISE MEMORY GARDENS, INC., an Arizona corporation, Defendant/Appellant.**

**No. 2 CA-CIV 5597.**

Court of Appeals of Arizona, Division 2, Department B.

April 30, 1986.

Riley & Hoggatt, P.C. by Wallace R. Hoggatt, and James K. Kerley, Sierra Vista, for plaintiff/appellee.

Bury, Moeller & Humphrey by David C. Bury, Tucson, for defendant/appellant.

OPINION

LACAGNINA, Judge.

Cochise Memory Gardens (the cemetery) appeals a jury verdict awarding $25,000 in punitive damages in favor of Ann Carol Tomasits as a result of an action brought by her for the mishandling of her parents' bodies during their disinterment and reinterment. The cemetery argues there was insufficient evidence to support the award of punitive damages.

We affirm.

FACTS

The events relevant to this appeal occurred as follows.

In February 1982 the cemetery sold Tomasits two plots for which she received deeds and a certificate of ownership. In May 1982 the cemetery learned that one of those plots had previously been sold to Luana Bascom, not a party to this action, as a part of contiguous plots for her parents. The cemetery failed to record the sale or deed for the earlier transaction, and Tomasits was not notified of the mistake when discovered by the cemetery. In Octo-

ber 1983 when Bascom's father died, Tomasits' parents' bodies were already interred (4/82 and 7/83). Bascom filed suit to have Tomasits' mother's body moved to allow Bascom's father to be buried.

In January 1984 the trial court ordered the cemetery to transfer Tomasits' parents' bodies to similar contiguous spaces and to prepare the plot for burial of Bascom's father. As of February 6, 1984, the cemetery's post-trial motions and special action petition had all been denied; however, the disinterment and reinterment did not take place until April 2, 1984. This occurred without notice to Tomasits or her attorney, without Tomasits or her representative being present for the exhumation, without Tomasits being offered any choice of new grave sites and without having a Roman Catholic priest present to consecrate the new burial ground.

## LAW

Although this court has not previously dealt with the question of liability for wrongful disinterment[1], the Restatement (Second) Torts § 868 states the rule:

Interference with Dead Bodies.

One who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body.

\* \* \* \* \* \*

Comment (e) "removes" includes disinterment.

We follow the Restatement absent contrary authority. *MacNeil v. Perkins*, 84 Ariz. 74, 324 P.2d 211 (1958).

The cemetery concedes, by not appealing the compensatory damages award ($1,000),

that Tomasits was entitled to recover for her mental anguish even in the absence of any physical injury if the anguish and suffering resulted from the cemetery's negligent mishandling of her parents' bodies. The court instructed the jury that the negligent handling included but was not limited to the disinterment and reburial of Tomasits' parents. *Hovis v. City of Burns*, 243 Or. 607, 415 P.2d 29 (1966); Prosser & Keeton, *Torts* § 54 at 362 (5th ed. 1984).

The cemetery also concedes the jury found as instructed that the cemetery did not act as a reasonably prudent person in relying on the advice of its attorney concerning the disinterment. The cemetery argues this is a case of *mere* negligence beginning with the "paper error" which occurred in 1982 and ending in April 1984 upon compliance with statute and court order. *See* A.R.S. § 32–1368(A)(2)(e). The cemetery attempts to use the statute as a shield protecting it from any liability for punitive damages, claiming this compliance could not have shown "reckless indifference to the interests of others."

We agree that evidence of compliance with a statute governing the procedure for disinterment has in some cases precluded an award of punitive damages. *See, e.g., Cybart v. Michael Reese Hospital and Medical Center*, 50 Ill.App.3d 411, 365 N.E.2d 1002 (1977). Courts have also construed such statutes as mandatory and held that any agreements made in contravention of these provisions have no effect. *See Bash v. Fir Grove Cemeteries Co.*, 282 Or. 677, 581 P.2d 75 (1978).

What distinguishes this case, as argued by Tomasits, is not the disinterment itself or compliance with court order in doing so but the *manner* of disinterment. First, the necessity of disinterment including the delay involved was a direct result of the cemetery's negligence—not recording the

---

1. The supreme court in *Hale v. Brown*, 84 Ariz. 61, 323 P.2d 955 (1958), in the only Arizona case dealing with the interference with dead bodies, cites the Restatement in a case dealing with a claim of wrongful embalming, indicating the basis for recovery as primarily for the mental suffering caused by the improper dealing with

the body. The court in *Hale v. Brown, supra,* concluded that the surviving spouse had not shown a claim for wrongful embalming because there was no allegation of mental suffering. However, the court decided the case on other grounds.

sale and deeds when Bascom bought the plots in 1980, compounded by the cemetery's failure to notify Tomasits of the error when it was discovered in 1982. Secondly, even absent a statute the law has always recognized the right of a surviving relative to have a body remain undisturbed.

Disinterment of a body is not favored in the law. Public policy frowns on the disinterment of a body and its removal to another burial place and it is the policy of the law except in cases of necessity or for laudible purposes that the sanctity of the grave should be maintained and that body once suitably buried should remain undisturbed.

25A C.J.S., Dead Bodies § 4(1) at 496 (1966). The provisions of A.R.S. § 32–1368 seek to protect these same rights, in this case by demanding a court order authorizing disinterment in the absence of consent by the surviving relatives. A.R.S. § 32–1368(A)(2)(e). The statute controls the exceptions allowing disinterment and the procedures to be followed. However, the cemetery's compliance with these provisions does not end the inquiry. The parties were initially in court concerning the disinterment because of the cemetery's negligence. The cemetery's actions following the court order are significant. The evidence before the jury concerning the cemetery's "reckless indifference to the interests of others" included the following:

1. Failure to notify Tomasits when the error was discovered in 1982.

2. Two-month delay in disinterment following the court order.

3. No prior notice to Tomasits of the disinterment.

4. No choice given to Tomasits of new grave sites.

5. No priest notified of disinterment and reinterment in order to consecrate the graves.

6. No notice given to Tomasits' representative as requested to allow his presence at the time of disinterment.

The cemetery's explanation of the above actions, including reliance on advice from its attorney, and a lack of request from Tomasits regarding the desire to be present or have a priest there, were all questions concerning the credibility of witnesses and the weight to be given the testimony and were properly submitted to the jury on the issue of punitive damages. *See Spomer v. City of Grand Junction,* 144 Colo. 207, 355 P.2d 960 (1960).

Finally, the cemetery argues punitive damages cannot be awarded in this case because its actions concerning the disinterment were based solely on the advice of counsel, citing *Pre-Fit Door, Inc. v. Dor-Ways, Inc.,* 13 Ariz.App. 438, 477 P.2d 557 (1970). First, we stated the rule in *Pre-Fit Door* by affirming a jury verdict and judgment in favor of defendants denying both compensatory and punitive damages. Secondly, we have not extended that broad legal principle to any fact situation closely resembling the present case. *See Huggins v. Deinhard,* 127 Ariz. 358, 360, 621 P.2d 45, 47 (App.1980). Thirdly, the court instructed the jury in this case to consider whether or not the cemetery acted as a reasonably prudent person in relying on the advice of its attorney concerning disinterment. If that reliance could be considered negligence, it cannot at the same time mitigate the punitive damages. The jury heard testimony from the cemetery's president, employees and its attorney and resolved all conflicting evidence and disputed issues in favor of Tomasits. Finally, since the jury found that the cemetery had acted with reckless indifference to the interests of others and awarded punitive damages, it necessarily found that the cemetery did not act in good faith. *Huggins v. Deinhard, supra.*

Affirmed.

LIVERMORE, P.J., and BIRDSALL, J., concur.