IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 13, 2007 Session

**ROBERT H. CRAWFORD, SR., ET AL. v.
J. AVERY BRYAN FUNERAL HOME, INC., ET AL.**

**Appeal from the Circuit Court for Hamilton County**
**No. 03C349     W. Neil Thomas, III, Judge**

_____

**No. E2006-00987-COA-R3-CV    Filed November 21, 2007**

_____

This appeal involves one of numerous civil lawsuits filed against T. Ray Brent Marsh and his former business, Tri-State Crematory, Inc., and others. The plaintiffs in this case are the parents and siblings of Robert H. Crawford, Jr., whose body was sent to the Tri-State Crematory for cremation. The body, however, was not cremated and to this day the plaintiffs do not know what happened to their loved ones' body. The Trial Court dismissed the lawsuit after finding that the decedent's surviving spouse was the only person with standing to bring the various tort claims asserted by the plaintiffs. The decedent's sister, Teri Crawford, appeals that determination. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
Circuit Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., joined. CHARLES D. SUSANO, JR., J., filed a separate opinion concurring in part and dissenting in part.

Teri Crawford, pro se Appellant.

John J. Britton and Chris W. McCarty, Knoxville, Tennessee, for the Appellee, J. Avery Bryan Funeral Home.

Stuart F. James, Chattanooga, Tennessee, for the Appellees, T. Ray Brent Marsh, Rhames Lashae Marsh, Tri-State Crematory, and Tri-State Crematory, Inc.

## OPINION

## I. Background

This is the second occasion this Court has had to consider an appeal from the many lawsuits arising from the actions of T. Ray Brent Marsh ("Marsh"), related to his operation of Tri-State Crematory, Inc. ("Tri-State") located in Noble, Georgia. Marsh currently is serving a twelve-year prison sentence in the State of Georgia for his actions.

In *Floyd v. Prime Succession of TN*, No. E2006-01085-COA-R9-CV, 2007 WL 2297810 (Tenn. Ct. App. Aug. 13, 2007), *no appl. perm. appeal filed*, we discussed some of the general background information giving rise to these various lawsuits.[1] The lawsuit in *Floyd* was filed by several relatives of Gail Lavan Floyd, who died in March of 2000. According to *Floyd*:

> The relevant underlying facts and procedural history are essentially undisputed. Gail Lavan Floyd died on March 21, 2000. Buckner-Rush Funeral Home in Cleveland agreed to handle the funeral arrangements and agreed to have Mrs. Floyd's remains cremated. Her body was to be cremated at Tri-State, located in Noble, Georgia, a business that provided cremation services for funeral homes in Tennessee, Georgia, and Alabama. Marsh had been operating Tri-State since 1996.

> This lawsuit was filed in July 2002. The plaintiffs sued various defendants, including the funeral home, Tri-State, and Marsh. According to the complaint,

> > [t]he [p]laintiffs placed the body of their loved one in the care of ... [the funeral home] with the specific expectation that the body would be handled in the manner and method described and with appropriate care and dignity as had been represented to them. The funeral was held and the body was placed in the possession of the ... [funeral home] for cremation with the full expectation and promise that their loved one's's [sic] remains would be returned to them after it was properly cremated. On or about April 4, 2000, the plaintiffs were advised that their loved one's's [sic] remains were at the funeral home and they could pick them up. This they did and received a black box which was represented to them by representatives of the . . . [funeral home] as being the remains of their loved one's [sic]

---

[1] The general background information is similar in all of the cases. The primary legal issue in *Floyd* involved Marsh's invocation of his Fifth Amendment privilege against self-incrimination.

and a copy of a death certificate that recites that cremation of the body was performed at the defendant Tri-State Crematory. . . .

On or about, February 25, 2002, the plaintiffs became aware through the media that bodies had been discovered on the grounds of the "Crematory" and that an investigation was proceeding. Plaintiffs have taken the box that was given to them by the ... [funeral home] and have been advised that the contents are adulterated materials and that therefore it could not be the remains of their loved one. To date, they have not been advised by the . . . [funeral home], the "Crematory" or the Georgia Bureau of Investigation where the body was disposed of or the manner it was disposed of.

Plaintiffs have since discovered that Tri-State Crematory was an [unlicensed] facility that was in a substantial state of disrepair. . . . Instead of the bodies being disposed of consistent with the "Cremation and Disposition Authorization" attached as Exhibit B, bodies that were taken to the "Crematory" were buried in pits or mass graves on the property or placed in burial vaults or just dumped on the ground.

*Floyd*, 2007 WL 2297810, at *1, 2 (footnote omitted)

In *Floyd*, we also discussed what happened to Marsh as a result of his actions described above. We noted that a Georgia grand jury returned 787 criminal indictments against Marsh pertaining to the over 200 bodies that had been identified. The indictments did not cover the roughly 110 bodies that were not or were unable to be identified. *Id*. at *2. Marsh eventually plead guilty to numerous counts in Georgia. The plea agreement accepted by the Walker County Superior Court provided as follows:

[The State of Georgia] would recommend in this case that the defendant be sentenced to serve twelve years in prison, that he shall also be given a concurrent term of probation of 75 years and that as a condition of probation that he pay a fine of 20 thousand dollars and that the payment of the fine commence within one year after his release from incarceration and that he pay the fine and attendant costs at the rate of one thousand dollars per year under the supervision of the probation officer and we would request that the defendant be directed to hand-write a letter of apology to be delivered to a designated representative for each of the identified remains in this

case. The letters would be turned over to the probation office for mailing to their ultimate destinations. We would ask the court to direct the defendant to write a general letter of apology. These would not be due until six months after the commencement of the sentence itself.

The defendant would pay restitution to the State of Georgia in the sum of eight million dollars in the event that the defendant shall either directly or indirectly attempt to profit or benefit in any manner from any transaction arising out of the sale of his story, so to speak, regarding these events.

The defendant shall be on unsupervised probation after the final payment of any and all fines and court costs and the sentence shall be concurrent with any other sentence he may receive in the State of Tennessee arising out of this and the period of incarceration shall begin sometime after January 1st of 2005.

*Floyd*, 2007 WL 2297810, at *3.

Following Marsh's guilty plea in Georgia, he pled guilty to numerous criminal charges brought against him by the State of Tennessee. Marsh received a total sentence of nine years in the Tennessee criminal cases. *Floyd*, 2007 WL 2297810, at *3. The nine-year sentence in Tennessee was to be served concurrently with the twelve-year sentence in Georgia.

## II. <u>The Present Lawsuit</u>

Robert H. Crawford, Jr., ("the decedent") died on February 26, 2001. At the time of his death, the decedent was married to Beverly Crawford ("Wife"). Wife made funeral arrangements with defendant J. Avery Bryan Funeral Home (the "Funeral Home") in Chattanooga, Tennessee. A contract for funeral services was entered into between Wife and the Funeral Home. In addition, Wife signed a document titled "Authorization for Cremation and Disposition." Among other things, this document contained Wife's authorization for the Funeral Home to release the decedent's body to Tri-State for cremation. These documents were signed only by Wife and a Funeral Home representative.

The decedent's body was transported to Tri-State Crematory for cremation. It is unknown what happened to the decedent's body after it arrived at Tri-State. The crematorium was non-operational at that time even though Marsh continued to accept bodies for cremation. For purposes of this appeal, we will assume that the decedent's body was not cremated and that the decedent's remains are one of the unidentified bodies found on Tri-State's premises, or that the decedent's body has yet to be found.

-4-

The present lawsuit was filed by Robert H. Crawford, Sr., Betty Davis, Teri Crawford, and Frank C. Crawford ("Plaintiffs"), the parents and siblings of the decedent. Wife is not a party to this lawsuit. Plaintiffs sued Tri-State Crematory, Inc., T. Ray Brent Marsh, Tommy R. Marsh, Clara C. Marsh, and Rhames L. Marsh, individually and doing business as Tri-State Crematory and/or Marsh Vault & Grave Service.[2] They also sued SCI Georgia Funeral Services, Inc., f/d/b/a J. Avery Bryan Funeral Home, Inc. According to the complaint:

> At all times material to this action . . . [Tri-State] was hired, engaged and retained by J. Avery Bryan Funeral Home to effectuate, as its agent, ostensible agent, servant, employee, representative, joint venturer, and associate, the process of cremating the remains of [Robert H. Crawford, Jr. . . .] At all material times, Defendants . . . [were] acting within the course and scope of that authority and with the knowledge, authorization, consent, permission or ratification of each other. J. Avery Bryan owed a contractual duty to ensure that the human remains entrusted to its care for cremation were cremated and that the cremation was handled in accordance with all legal obligations. J. Avery Bryan breached that duty, and thus is vicariously liable for the actions of [Tri-State] . . . . All defendants were charged to carry out Plaintiffs' wishes fully, specifically, and respectfully, and the intentional, willful, knowing and reckless acts of Defendants Tri-State are imputed to J. Avery Bryan so as to make all Defendants jointly and severally liable for compensatory and punitive damages to Plaintiffs.

Plaintiffs raised numerous claims including claims for breach of contract, breach of fiduciary duty, negligence, misrepresentation, negligent and intentional infliction of emotional distress, intentional mishandling of a corpse, and fraud.

### III. The Georgia Class Action Lawsuit

As one might expect, numerous lawsuits were filed in several states against Marsh, Tri-State, and the funeral homes. The plaintiffs in one of the Georgia lawsuits sought class action certification. On March 17, 2003, the United States District Court for the Northern District of Georgia certified class action status. *See In Re Tri-State Crematory Litigation*, 215 F.R.D. 660 (N.D. Ga. 2003). In addition to Marsh and Tri-State, one of the many defendants in the class action lawsuit was J. Avery Bryan Funeral Home, Inc. *Id.* at 671. The claims asserted in the class action lawsuit were: "breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, fraudulent concealment, negligence, intentional mishandling of a corpse, intentional infliction

---

[2] T. Ray Brent Marsh was the manager of Tri-State Crematory, Inc. With regard to that corporate entity, Plaintiffs alleged that Rhames L. Marsh was the CEO, Clara Marsh was the CFO, and Tommy Marsh was the President and registered agent. Plaintiffs also alleged that Tri-State Crematory, Inc., was administratively dissolved in 1997.

of emotional distress, negligent infliction of emotional distress, and unjust enrichment." *Id*. at 675. The *Tri-State* Court made numerous findings and conclusions in a very thorough opinion certifying the class. We will set forth a few of these findings[3]:

> [T]he Court concludes that the named Plaintiffs have standing to bring claims on behalf of the class members for: (1) breach of contract; (2) fraudulent conduct as to the Tri-State Defendants; (3) negligence; (4) willful interference with remains and intentional mishandling of a corpse; (5) negligent interference with remains and mishandling of a corpse; and (6) intentional infliction of emotional distress. The Court further concludes that the named Plaintiffs have standing to sue all named Defendants, including both Funeral Home Defendants and the Tri-State Defendants. (215 F.R.D. at 688)

> \* \* \*

> The Court concludes that certain negligence issues are appropriate for class treatment. Those issues include: (1) the nature and duration of Defendant Tri-State's alleged mishandling of human remains; (2) the standard of care in the funeral industry - alleged to apply to Defendants - for providing and supervising cremation services; (3) the nature of Defendants' alleged breach of that standard of care, either by action or inaction; and (4) whether "uncertainty" is an actionable injury. The Court therefore exercises its power under Rule 23(c)(4)(A) and Rule 23(b)(3) to certify those issues related to Defendants' duty of Plaintiffs and whether Defendants breached that duty. (215 F.R.D. at 696, 697)

> \* \* \*

> The Court . . . certifies a Plaintiff class defined as follows:

> All those who are or were next of kin of any decedents delivered for cremation to Defendant Tri-State Crematory from the years 1988 to 2002; all persons or entities who were parties to any contract with any Defendant regarding funeral arrangements for a decedent who was delivered for cremation to Defendant Tri-State Crematory from 1988 to 2002 whose claim is not barred by the applicable statute of limitations; and a subclass defined as the next of kin of decedents whose uncremated or otherwise desecrated remains have been

---

[3] We have added the pinpoint cites following each paragraph.

recovered from the property of Defendant Tri-State Crematory or the property surrounding Defendant Tri-State.  (215 F.R.D. at 701)

A subclass which included the claimants whose deceased relatives were sent to Tri-State from J. Avery Bryan Funeral Home eventually was created by the *Tri-State* Court.  In June of 2004, an order was entered approving a proposed class settlement for all of claimants in this particular subclass.  That order provides, *inter alia*, as follows:

> For the sole purpose of conducting the settlement approval process contemplated under Fed. R. Civ. P. 23(e), this Court designated a settlement subclass of the previously certified class, J. Avery Bryan Funeral Home, Inc. subclass defined as:
>
>> All those who are or were next of kin of any decedents delivered to J. Avery Bryan Funeral Home, Inc. for cremation and sent to Defendant Tri-State Crematory from January 1, 1988 to February 15, 2002; and
>>
>> All person or entities who were parties to any contract with J. Avery Bryan Funeral Home, Inc. for funeral arrangements for any decedent who was delivered for cremation to Defendant Tri-State Crematory from January 1, 1988 to February 15, 2002.
>
> * * *
>
> Forms of "Notice of Class Action and Proposed Partial Class Action Settlement" were approved for dissemination, as specified in the approved Class Notice Plan, commencing April 19, 2004. Settlement Class members were allowed to exclude themselves from the Class ("opt out") by submitting their exclusion requests, in the manner specified in the Class Action Notice, not later than the postmarked date of May 24, 2004.
>
> This Court has conducted a Final Approval Hearing on June 4, 2004, at the United States District Court for the Northern District of Georgia, in Rome, Georgia, to hear from the settling parties and any J. Avery Bryan Funeral Home, Inc. Settlement Subclass member who wished to be heard, and to determine whether the proposed settlement should be granted final approval.

-7-

The Court then stated that the settlement was approved and the "Order and Judgment constitutes the final approval of the J. Avery Bryan Funeral Home, Inc. settlement pursuant to the provisions of Fed. R. Civ. P. 23(e)."

Wife did not opt out of the Georgia class actions lawsuit and all of her claims were settled upon entry of the above order.

### IV. **The Dismissal of the Present Case**

After Wife settled all of her claims in the Georgia class action lawsuit, the Funeral Home filed a motion for summary judgment and the Marsh defendants and Tri-State filed a motion to dismiss. The defendants maintained in these motions, among other things, that the present lawsuit should be dismissed because Wife was the only person with standing to bring any of the claims at issue. The defendants argued that because all of Wife's claims had been settled, the present lawsuit filed by the decedent's parents and siblings must be dismissed for lack of standing. Attached to the motion for summary judgment was an affidavit prepared by Wife prior to her settlement in the class action lawsuit. In this affidavit Wife states as follows:

1.      That Robert Howard Crawford, Jr. died on February 26, 2001; AND

2.      I was married to Robert Howard Crawford, Jr. at the time of [his] death.

3.      I have sole entitlement to the class action settlement benefits derived from this Litigation in consideration of my release of all claims related to the Tri-State Crematory incident against the Released Persons as defined in the Settlement Agreement.

4.      [I] understand that the J. Avery Bryan Settlement Administrator and the Released Persons as identified in the Settlement Agreement, together with its affiliates, is relying upon this Affidavit as an inducement to recognize my interest in the class action settlement.

In consideration of recognizing my interest in the class action settlement, I hereby agree to release all claims against Released Persons identified in the Settlement Agreement and to indemnify and hold harmless the J. Avery Bryan Settlement Administrator and Released Persons identified in the Settlement Agreement, together with its affiliates, its officers and directors, agents and employees from any claims, losses, or damages arising out of this claim of

authority, including, but not limited to, any liability for State of Federal taxes, fees, and penalties.

The Trial Court granted the motions and dismissed the entire lawsuit against all of the defendants.[4]  According to the Trial Court:

> The facts central to the consideration of this motion are not complex.  The Plaintiffs are the father, the mother, the sister and brother of Robert H. Crawford, Jr., who died on February 26, 2001, and whose remains were delivered to Tri-State Crematory for cremation.  The Plaintiffs allege that what was returned to them were not the cremains of their brother and son.  The widow of Robert H. Crawford, Jr., Beverly Crawford Henson, made a claim in the class action settlement and executed a release in favor of J. Avery Bryan. *In Re: Tri-State Crematory Litigation*, MDL Docket No. 1467 (N.D. Ga.).  The issue at the core of this motion for summary judgment is whether the Plaintiffs in this lawsuit have standing to maintain a claim against these Defendants.  The case most in point in this state is *Hill v. Traveler's Insurance Co.*, 294 S.W. 1097 (Tenn. 1927).  The action against Traveler's was for mutilation of the body of the Plaintiff's deceased husband.  That case is analogous to this one in that this case involves mutilation of a body.  In that case, the Supreme Court held that the right to possession of a dead body for the purpose of burial is vested in the surviving spouse.  In *Hill*, the Supreme Court relied upon the Minnesota decision of *Larson v. Chase*, 50 N.W. 238 (Minn. 1891), which did state that the right of a surviving spouse was paramount to that of the next of kin.  The cases involving right to control burial provide that the surviving spouse has the superior right.…

The Trial Court then dismissed all of the Plaintiffs' claims.  The decedent's sister, Teri Crawford, proceeding pro se, appeals the Trial Court's dismissal of her lawsuit.

## V.  Discussion

In *Teter v. Republic Parking System, Inc.*, 181 S.W.3d 330 (Tenn. 2005), our Supreme Court recently reiterated the standards applicable when appellate courts are reviewing a motion for summary judgment.  The Court stated:

---

[4] Although Tri-State and the Marsh defendants filed a motion to dismiss, the Trial Court correctly treated the motion as if it were a motion for summary judgment because matters outside the pleadings were considered when ruling on that motion.  *See* Tenn. R. Civ. P. 12.02.

The purpose of summary judgment is to resolve controlling issues of law rather than to find facts or resolve disputed issues of fact. *Bellamy v. Fed. Express Corp.*, 749 S.W.2d 31, 33 (Tenn. 1988). Summary judgment is appropriate only when the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04; *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). In reviewing the record, the appellate court must view all the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). And because this inquiry involves a question of law only, the standard of review is de novo with no presumption of correctness attached to the trial court's conclusions. *See Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*Teter*, 181 S.W.3d at 337.

In *Hill v. Travelers' Ins. Co.*, 294 S.W. 1097 (Tenn. 1927), the wife of the decedent brought suit seeking damages for "an unauthorized mutilation and exposure of the body of her deceased husband." *Id*. The wife in *Hill* had given consent for an autopsy to be performed on her deceased husband. The consent was given subject to some limitations, including a requirement that the autopsy be conducted in a private place and the body could not be mutilated. The wife claimed neither of these conditions were met. The wife's claim was dismissed for failure to state a cause of action. Our Supreme Court reversed, stating, in part, as follows:

The case of Larson v. Chase, 47 Minn. 307, 50 N.W. 238, 14 L. R. A. 85, 28 Am. St. Rep. 370, has been referred to many times in cases from other jurisdictions as the leading case on this question. It was there held that the right to the possession of a dead body for the purposes of decent burial is vested in the surviving husband or wife or next of kin, and that it is a right which the law will recognize and protect. While disaffirming the proposition that a corpse is property in the ordinary commercial sense, the court held that any interference with the right of possession for burial, by mutilating or otherwise disturbing the body, is an actionable wrong and a subject for compensation. Dealing with the measure of damages for such a wrong, the Supreme Court of Minnesota said:

"Wherever the act complained of constitutes a violation of some legal right of the plaintiff, which always, in contemplation of law, causes injury, he is entitled to recover

-10-

all damages which are the proximate and natural consequence of the wrongful act. That mental suffering and injury to the feelings would be ordinarily the natural and proximate result of knowledge that the remains of a deceased husband had been mutilated, is too plain to admit of argument."

We have not been able to find any dissent from the general propositions asserted in Larson v. Chase, supra.

\* \* \*

The plaintiff in the present case, having the undoubted right to refuse to permit an autopsy to be held at all, had the right to clothe her consent with any stipulations or limitations she might choose to make. The expressed limitation that the body should not be mutilated clearly negatives any consent on the part of the plaintiff that any portion of the body should be severed and removed. Also, we think the plaintiff had the right to dictate that the autopsy be held in private and not in a public place. The violation of either or both of these limitations on the permission given by the plaintiff for the autopsy was a trespass on her rights as defined in the authorities hereinabove cited.

It is our conclusion, therefore, that the declaration did state a cause of action against both of the defendants.

*Hill*, 294 S.W. at 1098-99.

Two important concepts are revealed by *Hill*. First, "mutilating or otherwise disturbing" a dead body is an actionable wrong. Second, it is the surviving spouse, if there is one, that has the right to possession and control of the body that the law protects. *See also Foley v. St. Thomas Hospital*, 906 S.W.2d 448, 453 (Tenn. Ct. App. 1995) ("Plaintiff, as a surviving spouse, had the sole legal authority over the disposition of her husband's remains."); *Estes v. Woodlawn Memorial Park, Inc.*, 780 S.W.2d 759, 762 (Tenn. Ct. App. 1989)("Absent an expressed desire of deceased, the surviving spouse and, if no surviving spouse, the next of kin, has the right of custody and burial of the remains of the deceased. 25A C.J.S. Dead Bodies § 3, pp. 491, 492, notes 11, 12.").

The result in *Hill* is consistent with the Restatement (Second) of Torts, § 868. This section of the Restatement (Second) provides as follows:

-11-

§ 868. Interference With Dead Bodies

One who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased *who is entitled to the disposition of the body*. (emphasis added)

Some of the comments to section 868 are also instructive. The pertinent comments provide:

Comment: a. One who is entitled to the disposition of the body of a deceased person has a cause of action in tort against one who intentionally, recklessly or negligently mistreats or improperly deals with the body, or prevents its proper burial or cremation. The technical basis of the cause of action is the interference with the exclusive right of control of the body, which frequently has been called by the courts a "property" or a "quasi-property" right. This does not, however, fit very well into the category of property, since the body ordinarily cannot be sold or transferred, has no utility and can be used only for the one purpose of interment or cremation. In practice the technical right has served as a mere peg upon which to hang damages for the mental distress inflicted upon the survivor; and in reality the cause of action has been exclusively one for the mental distress. The rule stated in this Section has thus a great deal in common with the rules stated in §§ 46, 312 and 313. There is no need to show physical consequences of the mental distress.

b. It is not within the scope of this Restatement to attempt to state who is entitled to the disposition of a dead body. The matter is governed by the statutes or common law rules of the various jurisdictions, to which reference must be made. Normally the right of disposition is in the surviving spouse, if any; or if none, then in the next of kin in order of succession.…

* * *

d. The rule stated in this Section applies not only to an intentional interference with the body itself or with its proper burial or cremation, but also to an interference that is reckless or merely negligent.…

-12-

* * *

g. The decisions in which recovery has been allowed for interference with a dead body have thus far been those in which the plaintiff has been the person entitled to disposition of the body or one of a group, such as children of the deceased, who have equal right of disposition. In the absence of decisions, the Institute expresses no opinion on whether one who is not entitled to the disposition may not, under some circumstances, have a cause of action for his own mental distress under the principle stated in this Section. Under the rule stated in § 46 one who by extreme and outrageous conduct intentionally or recklessly inflicts severe emotional distress upon another is subject to liability for the emotional distress. The outrageous mistreatment of a dead body in the presence of surviving relatives would appear to be a proper case for liability under that Section. But even when the conduct of the defendant is merely negligent, it is difficult to conclude that a widow who has the technical right of disposition of the body but is not present on the scene should be entitled to recover, while a daughter who is present, but has no such right should not.

Restatement (Second) of Torts § 868, cmts. a, b, d & g (1979).

Several jurisdictions have either followed the Restatement (Second) of Torts § 868, or have reached the same result based on that particular jurisdiction's law. For example, in *Perry v. Saint Francis Hospital and Medical Center, Inc.*, 865 F. Supp. 724 (D. Kan. 1994), the Court observed that:

Generally, the person who has the right to possess and bury the body is the only proper party to sue and recover for the interference with that right. *Steagall v. Doctors Hospital*, 171 F.2d 352, 353 (D.C. Cir. 1948); *Burns v. Anchorage Funeral Chapel*, 495 P.2d 70, 73 (Alaska 1972); *O'Dea v. Mitchell*, 350 Mass. 163, 213 N.E.2d 870, 872 (Mass. 1966); *Dumouchelle v. Duke University*, 69 N.C. App. 471, 317 S.E.2d 100, 103 (N.C. Ct. App. 1984); *Whitehair v. Highland Memory Gardens, Inc.*, 174 W.Va. 458, 327 S.E.2d 438, 443 (W.Va.1985); Restatement of Torts (Second) § 868 cmts. a, b (1977); 22A Am.Jur.2d *Dead Bodies* § 137 (1988); 25A C.J.S. *Dead Bodies* § 9 at pp. 520-21 (1966); James O. Pearson, Jr., Annotation, *Liability for Wrongful Autopsy*, 18 A.L.R. 4th 858, 865 (1982). This right typically belongs to the surviving spouse and, if none, then passes to the next of kin in the order of relation. *Steagall*, 171 F.2d

-13-

at 353; *Burns*, 495 P.2d at 73; *Whitehair*, 327 S.E.2d at 443; Annot. 18 A.L.R.4th at 865.

There is nothing in its case law to suggest that Kansas courts would depart from these general standing rules.…

*Perry*, 865 F. Supp. at 726.

Other jurisdictions which have either adopted the Restatement (Second) of Torts § 868 or which have reached the same result under state statutory law include, but are not limited to: *Tomasits v. Cochise Memory Gardens, Inc.*, 721 P.2d 1166 (Az. App. 1986) (adopting Restatement (Second) of Torts § 868 and affirming $25,000 punitive damage award to the plaintiff for wrongful disinterment of the plaintiff's deceased parents); *Andrews v. McGowan*, 739 So. 2d 132 (Fla. App. 1999) (dismissing claims for tortious interference with lawful rights of burial, conversion, fraud, negligence, and intentional infliction of emotional distress brought by the decedent's children after finding that the decedent's husband "was the legally authorized person to direct the disposition of the decedent's remains" and the funeral home was not liable in tort to the decedent's children as a matter of law); *Walser v. Resthaven Memorial Gardens, Inc.*, 633 A.2d 466, 475 (Md. App. 1993)("As we have already explained, the class of persons protected by the principle enunciated in Restatement § 868 is limited to those 'entitled to the disposition of the body,' and, while facially, [the decedent's mother] might fall within that class [because the decedent was not married at the time of death], her children would not *also* be within it. So long as [the decedent's mother] was alive, she alone formed the protected class. We therefore affirm the judgments entered against [the decedent's] siblings.…"; *Whaley v. County of Saginaw*, 941 F. Supp. 1483 (E.D. Mich 1996) (dismissing state law claims for mutilation of a body brought by the decedent's siblings because under Michigan law, the parents have a superior right to disposition of a body over siblings[5]); *Amaker v. King County*, 479 F. Supp.2d 1159 (W.D. Wash 2007) (under Washington law, the decedent's sister did not have standing to bring a claim for tortious interference with a dead body when, at the time of death, the decedent's father had the right to control disposition of the body).

When considering all of the above, we conclude that, in Tennessee, any tort claims for negligent, reckless or intentional interference with a dead body and the like can be brought only by the person or persons who have the right to control disposition of the body.[6] Pursuant to *Hill*, it is the surviving spouse who has the superior right to control disposition of the body. Therefore, in the present case, the Trial Court correctly held that because Wife had the right to control disposition

[5] The Court also noted that a surviving spouse has superior rights over the parents. *Id*. at 1490. Apparently the decedent in *Whaley* was not married.

[6] This would also include tort claims such as negligent and/or intentional infliction of emotional distress. It would not, however, include claims for breach of contract. In the present case, the plaintiffs were not a party to the contract with the Funeral Home and, on appeal, Teri Crawford does not argue that she was a party to any contract with the Funeral Home or Tri-State.

of the decedent's body, she alone had the right to bring the various tort claims against the Funeral Home and Tri-State.[7] These claims were properly dismissed for lack of standing.

There are two final points worth emphasizing. First, section 868, by definition, only applies to cases involving conduct committed upon dead bodies. It necessarily follows that any limitation imposed by section 868 does not apply to tortious conduct committed upon live persons, such as that addressed by our Supreme Court in *Doe v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22 (Tenn. 2005). Second, we are not holding that someone who does not have control over disposition of a decedent's body never can bring a tort claim for emotional distress and the like. For example, if the body was mutilated in the presence of a family member, then our holding in this case would not prevent that family member from filing a lawsuit, even if that family member did not have control over the body's disposition. *See* comment g to the Restatement (Second) of Torts, § 868, *supra*.

Teri Crawford has set forth numerous issues in this appeal. However, our conclusion that she did not have standing to bring the present lawsuit necessarily renders all of the other various issues moot except one, which is her claim that the Trial Court erred when it taxed costs to the plaintiffs. Although the plaintiffs certainly are not the "bad actors" in this case and we fully understand their frustration, we simply cannot conclude that the Trial Court abused its discretion when it taxed costs to the unsuccessful parties.

## VI. Conclusion

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for collection of the costs below. Costs on appeal are taxed to the Appellant, Teri Crawford, and her surety, if any.

_____
D. MICHAEL SWINEY, JUDGE

---

[7] Since the decedent in the present case had a surviving spouse, the issue of priority among next of kin is not an issue on this appeal. The issue of who has control over disposition of a body when there is no surviving spouse is discussed at length in *Akers v. Buckner-Rush Enterprises, Inc.*, No. E2006-01513-COA-R3-CV, filed contemporaneously with this Opinion.