Debbie HARRIS, individually and as next of kin to her son Jeremy Wooten; Christopher Harris, individually and as next of kin to his brother, Jeremy Wooten; Chasity Brown, individually and as next of kin to her brother Jeremy Wooten

v.

Don HORTON and Robertson County.

No. M2008–02142–COA–R3–CV.

Court of Appeals of Tennessee, Western Section, at Nashville.

June 23, 2009 Session.

Dec. 14, 2009.

Petition to Rehear
Denied
Feb. 2, 2010.

Permission to Appeal Denied
by Supreme Court Aug. 30, 2010.

David L. Cooper and H. Anthony Duncan, Nashville, Tennessee, for the Plaintiffs/Appellants Debbie Harris, Christopher Harris, and Chasity Brown.

Ed R. Davies and A. Chad Davidson, Nashville, Tennessee, for the Defendants/Appellees Don Horton and Robertson County.

## OPINION

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

A young man died in a motor vehicle accident on a public highway. The defendant county's emergency medical services unit, including the defendant paramedic, responded to the accident. Photographs were taken of the accident scene, including photographs of the young man's body. Three months later, the defendant paramedic gave a presentation to a high school driver's education class. To aid his presentation, he circulated among the students photo albums containing photographs of automobile accident scenes. The albums included accident scene photographs of the young man's corpse. The young man's family then filed a lawsuit against the paramedic and the county, asserting claims for, *inter alia,* interference with and mishandling of human remains, invasion of privacy based on intrusion upon seclusion, invasion of privacy for publicizing private facts, and infliction of emotional distress. The trial court dismissed the claim for interference with human remains for failure to state a claim and granted summary judgment to the paramedic and the county on the other claims. The family now appeals. We affirm.

### FACTS AND PROCEDURAL HISTORY

This case arises out of a tragedy. On February 26, 2004, 21–year–old Jeremy Shane Wooten ("Jeremy") was involved in a motor vehicle accident on Highway 431 South, near Coopertown, in Robertson County, Tennessee. In the accident, Jeremy was ejected from the vehicle and sustained grievous injuries. He died at the scene.

The first responders to the accident scene included members of the Tennessee Highway Patrol and the Emergency Medical Services of Defendant/Appellee Robertson County, including Defendant/Appellee Emergency Medical Technician/Paramedic Don Horton ("Horton"). As was typically done at the scene of serious vehicular accidents, photographs of the accident scene were taken. These included photographs of Jeremy's lifeless body at the scene, as well as photographs of his body after it was placed in a body bag. The photographs of Jeremy's body ended up in Horton's possession in a photo album that he kept of serious vehicular accidents to which he had responded.

Less than a week after the accident, the Robertson County Times published an article about the accident in which Jeremy was killed. The article mentioned Jeremy's name and gave details of the accident. None of the photographs in Horton's possession was published with the article.

Approximately three months after the accident, on May 28, 2004, Horton was asked to appear at a driver's education class at the high school Jeremy had attended. Horton was asked to assist the driver's education instructor by explaining to the students the dangers of reckless driving. To aid his presentation, Horton brought two photo albums of accident scenes. One included the photographs of Jeremy's body.[1]

---

1. Before the albums were circulated among the students for viewing, Horton and the driver's education instructor went through them to remove and set aside photographs that were too graphic. The parties dispute whether the photographs of Jeremy's body were in

A student at the driver's education class saw the photographs of Jeremy's body, recognized Jeremy, and became upset. She removed the photos and ran out of the class, taking the photos with her. The student then telephoned Jeremy's best friend to inform him of the photographs, and she gave the photographs to him. Jeremy's best friend then contacted Jeremy's family, including his sister, Plaintiff/Appellant Chasity Brown ("Sister"), and his mother, Plaintiff/Appellant Debbie Harris ("Mother"). The best friend then gave the photographs to Mother and Sister.

Mother and Sister met with the Robertson County Emergency Medical Services Director, Jackie Wilkerson. The meeting with Mr. Wilkerson and their other efforts did not result in a resolution of the matter.

On December 22, 2004, Mother, Sister, and Jeremy's brother, Plaintiff/Appellant Christopher Harris (collectively "Plaintiffs") filed this lawsuit against Horton and Robertson County (collectively "Defendants"). The original complaint asserted claims for invasion of privacy based on intrusion upon seclusion, invasion of privacy based on publicity given to private facts, intentional infliction of emotional distress, and negligent infliction of emotional distress. The complaint was later amended to add, *inter alia*, a claim for interference with and mishandling of human remains. Both the original and amended complaints asserted that Horton acted recklessly.

The Defendants initially filed a motion to dismiss premised on governmental immunity grounds; this was denied.[2] The

Defendants then filed a motion to dismiss the claims for interference with and mishandling of human remains and for invasion of privacy, for failure to state a claim upon which relief could be granted. The trial court denied the motion as to the claims for invasion of privacy, but granted it as to the claim for interference with and mishandling of human remains. In the order, the trial court found that the complaint "failed to assert the elements necessary to establish that [D]efendants have abused a corpse within the meaning of T.C.A. § 39–17–312."

The Defendants then filed an answer, and an amended answer, to the amended complaint. Discovery ensued. In his deposition, Horton acknowledged that he had worked at the accident scene at which Jeremy died, but had little recollection of it. He denied taking the photographs in question, but said that emergency responders were authorized to photograph accident scenes, including victims. Horton could not estimate the number of students in the driver's education class, but said that it was conducted in an auditorium-type room with stadium seating. Prior to the driver's education class in question, Horton and the teacher looked through the photo albums to remove photos that were not suitable for the class. The two albums were then passed among the students in attendance. Horton did not remember seeing the photos of Jeremy in the photo albums. The driver's education teacher testified that she had recognized photos of Jeremy and removed them from the albums. The student in the driver's education class who ran out of the class with the photographs maintained that the pho-

fact removed from the albums prior to circulation of them among the students.

2. The denial of this motion generated the first appeal in this case, No. M2005–01827–COA–R3–CV. After this Court dismissed the appeal, a Rule 11 application for permission to appeal to the Tennessee Supreme Court was filed. The Supreme Court denied the application and issued mandate on September 1, 2006.

tographs of Jeremy were in a photo album that were passed among the students.

On February 7, 2008, the Defendants filed a motion for summary judgment.[3] On the same date, the Plaintiffs filed a cross-motion for partial summary judgment, as well as a Rule 60.02 motion to alter or amend the order dismissing the claim for interference with or mishandling of human remains. In a memorandum opinion filed August 20, 2008 and an order entered September 11, 2008, the trial court dismissed the claims for invasion of privacy on the basis that the right of privacy is a personal right that lapses upon death and cannot be asserted by family members. It found no intrusion upon seclusion because the photographs were taken in a public place, on a public highway. It found no invasion of privacy by publicity of private fact because the vehicular accident caused Jeremy to become an "involuntary public figure," and therefore the accident and Jeremy were appropriate subjects of public interest.

The trial court dismissed the claim for intentional infliction of emotional distress, finding there was no evidence of intent where there was no showing that Horton knew that the photos of Jeremy were in the photo album. It found no negligent infliction of emotional distress because the Plaintiff family members were not present at the driver's education class where the photographs were allegedly shown. It found no reckless infliction of emotional distress because recklessness was neither pled nor shown, and also because the requisite intent was not shown. Therefore, the trial court granted the Defendants' motion for summary judgment. In a separate order also filed on August 20, 2008, the trial court denied the Plaintiffs' motion

to alter or amend. The Plaintiffs now appeal.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

The Plaintiffs raise the following issues for review:

(1) Whether the trial court erred in dismissing the claim for interference with and mishandling of human remains for failure to state a claim upon which relief could be granted; and

(2) Whether the trial court erred in granting summary judgment in favor of the Defendants on the claims for invasion of privacy and reckless infliction of emotional distress.

A motion to dismiss for failure to state a claim "tests only the legal sufficiency of the complaint, not the strength of a plaintiff's proof." *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn.1997). In reviewing a trial court's grant of a motion to dismiss, this Court takes "all allegations of fact in the plaintiff's complaint as true, and review[s] the lower courts' legal conclusions *de novo* with no presumption of correctness." *Id.* (citing Tenn. R.App. P. 13(d); *Owens v. Truckstops of Am.*, 915 S.W.2d 420, 424 (Tenn.1996); *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn.1994)).

A grant of summary judgment is reviewed *de novo* without any presumption of correctness. *See Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn.2002) (citing *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 894 (Tenn.1996); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995)). Upon review, the appellate court determines whether the requirements of Rule 56.04 of the Tennessee Rules of Civil Procedure have been met.

---

**3.** Two prior motions for summary judgment were stricken before the trial court ruled on them.

*See id.* (citing TENN. R. CIV. P. 56.04; *Byrd v. Hall,* 847 S.W.2d 208, 211 (Tenn.1993)). In other words, the trial court's ruling is reviewed to determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04.

## ANALYSIS

### Interference with and Mishandling of Human Remains

■ The Plaintiffs assert that the trial court erred in dismissing their claim for interference with and mishandling of human remains. In the order dismissing the claim, the trial court held that the Plaintiffs had "failed to assert the elements necessary to establish that [D]efendants have abused a corpse within the meaning of T.C.A. § 39–17–312." Tennessee Code Annotated § 39–17–312 makes it a criminal offense to "[p]hysically mistreat[ ] a corpse in a manner offensive to the sensibilities of an ordinary person." T.C.A. § 39–17–312(a)(1) (2006). The Plaintiffs argue that the trial court erred in citing section 39–17–312, and in apparently viewing their claim as a private cause of action arising out of violation of a criminal statute. *See, e.g., Owens v. Univ. Club of Memphis,* No. 02A01–9705–CV–00103, 1998 WL 719516, at *10 (Tenn.Ct.App. Oct. 15, 1998), *no perm. app.* The Plaintiffs contend instead that their claim arises out of Tennessee common law, citing *Crawford v. J. Avery Bryan Funeral Home, Inc.,* 253 S.W.3d 149, 157 (Tenn.Ct.App.2007), *perm. app. denied* Apr. 7, 2008, and *Hill v. Travelers' Ins. Co.,* 154 Tenn. 295, 294 S.W. 1097, 1098–99 (1927).

In *Hill,* the wife of the decedent filed a lawsuit against the decedent's insurer for mishandling the decedent's remains. *Hill,* 294 S.W. at 1097. After the decedent died, the insurer sought permission from the wife to perform an autopsy on the decedent. The wife agreed on the condition that the autopsy "must not involve the mutilation of the body." *Id.* In the course of performing the autopsy, the insurer's agent removed vital organs from the decedent's body. *Id.* The wife sued the insurer for "unauthorized mutilation" of her deceased husband's body. *Id.* The trial court dismissed the case for failure to state a claim. *Id.* On appeal, the Tennessee Supreme Court reversed and found that the wife had in fact stated a valid claim, stating: "[t]he damages recoverable in such a case are not for the injury done to the dead body, but are for the wrong or trespass on the plaintiff's right to the undisturbed possession and control of the body, measured by the mental anguish and suffering of the plaintiff occasioned thereby." *Id.* at 1099.

This holding was reiterated many years later in *Crawford v. J. Avery Bryan Funeral Home, Inc.,* 253 S.W.3d 149, 157 (Tenn.Ct.App.2007), *perm. app. denied* Apr. 7, 2008. In *Crawford,* the parents and siblings of the decedent filed a lawsuit against a crematory when the decedent's body was neither cremated nor returned to them. *Crawford,* 253 S.W.3d at 150–52. The central issue in *Crawford* was standing; however, the court cited *Hill* for the proposition that " 'mutilating or otherwise disturbing' a dead body is an actionable wrong." *Id.* at 157. The Plaintiffs cite both *Hill* and *Crawford* as confirming that a decedent's next-of-kin have a protectable interest in the decedent's remains.

Recognizing that both *Hill* and *Crawford* involved contact with the physical body and not the display of a photograph of the decedent's body, the Plaintiffs cite a Kentucky case, *Douglas v. Stokes,* 149 Ky.

506, 149 S.W. 849 (1912), in which the parents of deceased conjoined twins hired a photographer to take photographs of the corpse. The agreement was for a specified number of photographs and no more. Contrary to the agreement, the photographer used the negative to make additional photographs, and even sent one to the copyright office to get it copyrighted. *Id.* at 849. The parents filed a lawsuit against the photographer, seeking damages. The Kentucky court recognized the parents' claim, noting that the twins' corpse was in the custody of the parents, and the photographer had no authority to photograph the corpse beyond the authority given him by the parents. *Id.* at 850. The *Douglas* court's analysis included a poignant description of the parents' interest in the photograph:

> The most tender affections of the human heart cluster about the body of one's dead child. A man may recover for any injury or indignity done the body, and it would be a reproach to the law if physical injuries might be recovered for, and not those incorporeal injuries which would cause much greater suffering and humiliation.

> If the defendant had wrongfully taken possession of the ... body of the plaintiff's dead children and exposed it to public view in an effort to make money out of it, it would not be doubted that an injury had been done them to recover for which an action might be maintained. When he wrongfully used the photograph of it, a like wrong was done; the

injury differing from that supposed in degree, but not in kind.

*Id.* (citations omitted). Synthesizing all of these cases, the Plaintiffs argue that Horton " 'disturbed' the human remains of Jeremy Wooten by possessing and displaying the illicit photographs of his dead body." [4]

Clearly, the claim recognized in *Hill* and *Crawford* requires some quantum of physical contact with the corpse in order to state a claim for interference with and mishandling of human remains. In both *Hill* and *Crawford,* the defendants had some type of physical contact with the corpse; the *Hill* defendant physically mutilated the decedent's body, and the *Crawford* defendant took possession of the decedent's body and failed to either cremate it or return it.

In the Kentucky decision of *Douglas v. Stokes,* the parents' claim against the photographer was for exceeding the authority given him by the parents and then seeking to utilize the photograph for his own profit. While the Kentucky court compared the parents' distress to that which would result from an unauthorized physical display of the twins' corpse, the court did not find that the use of the photographs constituted "disturbing" or mishandling human remains.

Nor do we. We must agree with the trial court's holding that the complaint fails to state a claim for interfering with or mishandling human remains.

### Invasion of Privacy

■ The Plaintiffs assert two types of invasion of privacy claims. [5] First, they

---

4. On appeal, the Plaintiffs do not appear to base the claim for interference with and mishandling of human remains on the taking of the photographs, only the possession and display of them.

5. There are four types of invasion of privacy: "(a) unreasonable intrusion upon the seclu-

sion of another ... (b) appropriation of the other's name or likeness ... (c) unreasonable publicity given to the other's private life ... (d) publicity that unreasonably places the other in a false light before the public...." RE-STATEMENT (SECOND) OF TORTS § 652A(2) (1977); *See, e.g., Givens v. Mullikin,* 75 S.W.3d 383,

assert that the display of the photographs of Jeremy's body constituted intrusion upon their seclusion. Second, they contend that the display invaded their privacy by publicizing private facts.

The trial court correctly noted that the right to privacy is a personal right in Tennessee. *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 648 (Tenn. 2001). In responding to a Tennessee Supreme Court Rule 23 certified question as to whether Tennessee recognized the tort of invasion of privacy by publicly placing the person in false light, *West*, 53 S.W.3d at 641, the Court recognized the tort, citing sections 652E–I of the Restatement (Second) of Torts (1977). The *West* court specifically adopted Section 652I, which states that the right to privacy is personal and cannot be asserted "by a member of the individual's family, even if brought after the death of the individual." *Id.* at 648 (citing RESTATEMENT (SECOND) OF TORTS § 652I cmt. a–c (1977)).

In this case, however, the Plaintiffs assert their own right of privacy with respect to the photographs of Jeremy's body, citing *Hill* and *Crawford* as establishing that Tennessee has recognized that the family of a decedent has protectable rights with respect to the decedent's remains. *See Crawford*, 253 S.W.3d at 157–58; *Hill*, 294 S.W. at 1098–99.

### Intrusion Upon Seclusion

■ In at least two decisions, Tennessee courts have recognized that an unreasonable intrusion upon the seclusion or private affairs of another may be actionable as a tortious invasion of privacy. *See Givens v. Mullikin*, 75 S.W.3d 383, 411 (Tenn.2002);

*Roberts v. Essex Microtel Assocs., II, L.P.*, 46 S.W.3d 205, 210–11 (Tenn.Ct.App.2000). In doing so, both courts quote the Restatement (Second) of Torts (1977) section 652B, which states: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Givens*, 75 S.W.3d at 411; *Roberts*, 46 S.W.3d at 210. The *Givens* Court also cited comment (c) to section 652B, which states that a defendant is subject to liability "only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." *Id.* at 412.[6]

The Plaintiffs argue that Horton's display of the photographs was an intrusion upon their seclusion or into their private affairs. They argue that the photographs of Jeremy's body, though taken on a public highway, were not taken in a public place because the accident scene was not open to the public while emergency personnel were working at the accident scene. They also contend that the Plaintiffs "threw a blanket of seclusion" around the photographs and the subject of Jeremy's body by having a closed-casket funeral for Jeremy. The record also includes affidavit testimony by the Plaintiffs that they considered photographs of Jeremy's body to be private.

■ We note that the Plaintiffs' claim is not based on the taking of the photographs, only their display by Horton. Nevertheless, as the trial court observed,

411 (Tenn.2002); *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 643 (Tenn.2001).

6. *Givens* is factually dissimilar to the facts in the instant appeal. In *Givens*, the plaintiff alleged that an attorney hired by an insurance

company to defend one of its insureds invaded the plaintiff's privacy by obtaining her medical records with defective subpoenas. *Givens*, 75 S.W.3d at 390–92.

the photos were taken in a public place. We must respectfully conclude that, under these circumstances, a display of the photographs cannot be deemed an "intrusion" into the Plaintiffs' "seclusion" or into their private affairs. Moreover, the tort of invasion of privacy by intrusion upon seclusion requires intent. *See* RESTATEMENT (SECOND) OF TORTS § 652B cmt. a (1977). There is no evidence in the record that Horton was aware that the photo albums contained photographs of Jeremy's body. Under all of these circumstances, we must affirm the trial court's grant of summary judgment on this claim.

### Publicity Given to Private Facts

The Plaintiffs also asserted a claim of invasion of privacy based on publicity given to private facts. Tennessee courts have recognized this tort. *See Cawood v. Booth,* No. E2007–02537–COAR3–CV, 2008 WL 4998408, at *8–9 (Tenn.Ct.App. Nov. 25, 2008), *perm. app. granted* June 15, 2009; *Lineberry v. Locke,* No. M1999–02169–COA–R3–CV, 2000 WL 1050627, at *2 (Tenn.Ct.App. July 31, 2000), *no perm. app.; Parr v. Middle Tenn. State Univ.,* No. M1999–01442–COA–R3–CV, 1999 WL 1086451, at *2–3 (Tenn.Ct.App. Dec. 3, 1999), *perm. app. denied* May 15, 2000. In *Cawood,* the Court quoted the Restatement (Second) of Torts section 652D, which states:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
>
> (a) would be highly offensive to a reasonable person, and
>
> (b) is not of legitimate concern to the public.

*Cawood,* 2008 WL 4998408, at *8–9 (quoting RESTATEMENT (SECOND) OF TORTS § 652D (1977)).

The Plaintiffs concede that there are no Tennessee cases with similar facts in which family members were found to have a protectable privacy interest in accident-scene photographs of their decedent. They cite cases from other jurisdictions in support of their argument. For example, in *Reid v. Pierce County,* 136 Wash.2d 195, 961 P.2d 333 (1998), the plaintiffs asserted claims against the defendant county employees for displaying autopsy photographs of the corpses of their family members. The plaintiffs alleged that the defendant employees in the county coroner's office appropriated photos taken either at the scene of death or at the medical examiner's office and showed them in safety classes or even at cocktail parties. *Id.* at 335–36. The *Reid* court noted that, by statute, autopsy records were deemed confidential. *Id.* at 341. It found that the relatives of the deceased had a protectable privacy interest in the autopsy photographs. *Id.* at 342. Under the circumstances of that case, the *Reid* court found that the relatives could maintain an action against the defendants for invasion of privacy by giving publicity to the autopsy photographs. *See id.*

In the case at bar, we agree with the Washington court in *Reid* that the Plaintiffs may have a protectable privacy interest in photographs of their deceased relative. This holding is consonant with prior Tennessee cases holding that the family of a decedent has a protectable interest in making certain that the decedent's remains are not disturbed or mutilated. *See Crawford,* 253 S.W.3d at 157; *Hill,* 294 S.W. at 1098–99. We proceed, then, to look at the elements of this invasion of privacy claim to determine if the trial court correctly granted summary judgment to the Defendants.

Section 652D emphasizes that the matter publicized must in fact be "private."

The comments state that "[t]here is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public" and that "there is no liability for giving further publicity to what the plaintiff himself leaves open to the public eye." RESTATEMENT (SECOND) OF TORTS § 652D cmt.b (1977). Here, the trial court apparently concluded that the photographs were not private because the accident occurred on a public highway and because there "is no liability for publicity to that which Jeremy Shane Wooten left open to the public eye."

The comments to Section 652D of the Restatement (Second) of Torts go on to explain that, even if the matters that are publicized are "private" and even if the publicity would be "highly offensive to a reasonable person," the claim may not be actionable where the matter publicized is a matter of legitimate public concern. *See* § 652D cmt.d. ("When the subject-matter of the publicity is of legitimate public concern, there is no invasion of privacy.") Here, the trial court found that the accident in which Jeremy was killed and its consequences were a matter of legitimate public concern, and pointed to the article in the local newspaper about the accident and Jeremy's resulting death.

The comments to Section 652D include a related exception for public figures; thus, if the subject of the publicity is a public figure, even publicity of private facts that would be highly offensive to a reasonable person will not be actionable. The comments explain that this applies not only to those who voluntarily place themselves in the public eye, but also to an "involuntary public figure":

There are other individuals who have not sought publicity or consented to it, but through their own conduct or otherwise have become a legitimate subject of public interest. They have, in other words, become "news." ... [This applies to those who are] victims of catastrophes or accidents or are involved in judicial proceedings or other events that attract public attention. These persons are regarded as properly subject to the public interest.... As in the case of the voluntary public figure, the authorized publicity is not limited to the event that itself arouses the public interest, and to some reasonable extent includes publicity given to the facts about the individual that would otherwise be purely private.

§ 652D cmt.f. The Restatement comment includes the following illustration:

A is run down in the street by an automobile and taken to a hospital. B newspaper publishes an account of the accident, together with a picture of A taken by a reporter after the event. This is not an invasion of A's privacy.

§ 652D cmt. f, illus.14.[7] In the case at bar, the trial court found that, "as a result of his involvement in a fatal motor vehicle accident on a public highway, [Jeremy] Wooten became [an] 'involuntary public figure' ... and thus an appropriate subject [of] public interest."

■ We must agree with the trial court's conclusion that, as a result of Jeremy's tragic involvement in the fatal vehicular accident, he became an involuntary public figure within the meaning of the comments to section 652D of the Restate-

---

**7.** The Restatement cautions that "[s]ome reasonable proportion is also to be maintained between the event or activity that makes the individual a public figure and the private facts to which publicity is given." § 652D cmt.h. As an illustration, for the unfortunate accident victim "A," if the newspaper reporter publishes the fact that A is living with a man who is not her husband, this "may be but is not definitely an invasion of A's privacy." § 652D cmt. h, illus. 20.

ment (Second) of Torts. Moreover, the fact to which publicity was given, namely, the appearance of Jeremy's body as depicted in the accident-scene photographs, is related to the event that gave rise to his status as an involuntary public figure. Therefore, assuming (without deciding) that the accident-scene photographs are private and that displaying the photographs at a driver's education class constitutes "publicity" that would be highly offensive to a reasonable person, we must conclude that the Plaintiffs cannot recover for invasion of privacy by publicity given to a private fact. Thus, we affirm the trial court's grant of summary judgment in favor of the Defendants on this claim.

### Infliction of Emotional Distress

In the Complaint and Amended Complaint, the Plaintiffs asserted a claim for intentional infliction of emotional distress and for negligent infliction of emotional distress. The Plaintiffs also asserted that Horton acted "recklessly." The Plaintiffs' claims for intentional and negligent infliction of emotional distress were dismissed by the trial court, and the Plaintiffs do not raise this as an issue on appeal.

The trial court also granted summary judgment to the Defendants on the Plaintiffs' claim for reckless infliction of emotional distress, and the Plaintiffs argue on appeal that this was error. In dismissing the claim, the trial court first found that the Plaintiffs failed to adequately plead the claim. Nevertheless, the trial court considered it for the purpose of ruling on the Defendants' summary judgment motion. The trial court then found that the Plaintiffs had "not met [the] awareness requirement" of reckless conduct, i.e. "that Mr. Horton was aware of but consciously disregarded the presence of photographs of Jeremy Wooten in the photograph album shown to the Driver's Education

class." In considering Horton's deposition testimony on his awareness, or lack thereof, the trial court implicitly found that the Defendants had affirmatively negated an essential element of the Plaintiffs' claim of reckless infliction of emotional distress. See Martin v. Norfolk S. Ry. Co., 271 S.W.3d 76, 83 (Tenn.2008) (citing Hannan v. Alltel Publ'g Co., 270 S.W.3d 1, 5 (Tenn. 2008)).

Tennessee recognizes a claim for reckless infliction of emotional distress, distinct from intentional or negligent infliction of emotional distress. See Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville, 154 S.W.3d 22 (Tenn.2005). The tort has three elements: "first, the conduct complained of must have been reckless; second, the conduct must have been so outrageous that it is not tolerated by civilized society; third, the conduct complained of must have caused serious mental injury." Id. at 41 (citing Bain v. Wells, 936 S.W.2d 618, 622 (Tenn.1997)). "Reckless" means that the actor is "aware of, but consciously ... disregard[s], a substantial and unjustifiable risk." Id. at 39 (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn.1992)).

After reviewing the evidence in the record, we must agree with the holding of the trial court. Horton testifies affirmatively that he was not aware the photographs of Jeremy were in the albums brought to the driver's education class. The Plaintiffs have pointed to no evidence that contradicts his testimony. Thus, we must conclude that the trial court did not err in granting summary judgment as to the Defendants on the claim of reckless infliction of emotional distress.

### CONCLUSION

The decision of the trial court is affirmed. The costs of this appeal are taxed to the Appellants Debbie Harris, Christo-

pher Harris, and Chasity Brown and their surety, for which execution may issue, if necessary.

## ORDER DENYING APPELLANTS' PETITION FOR REHEARING

On December 28, 2009, the Appellants Debbie Harris, individually and as next-of-kin of her son, et al., filed a Petition for Rehearing. On January 19, 2010, Appellants filed a Supplemental Petition for Rehearing. Upon due consideration, both petitions for rehearing are denied. Costs are taxed to Appellants.

**IT IS SO ORDERED.**