IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 2, 2022

## TODD ANDREACCHIO, ET AL. v. JOSEPH HAMILTON, ET AL.

**Appeal from the Circuit Court for Dickson County**
**No. 22CC-2020-CV-18     Larry J. Wallace, Judge**

_____

### No. M2021-01021-COA-R3-CV

_____

This appeal involves a claim of intentional or, alternatively, negligent infliction of emotional distress. Christian Andreacchio, son of Todd and Rae Andreacchio ("Plaintiffs"), died in Meridian, Mississippi. The Meridian Police Department ruled Christian Andreacchio's death a suicide. Plaintiffs contend that, contrary to the official conclusion, their son was murdered. Joseph (aka Joel) Hamilton ("Defendant") created a Facebook page to express his own opinions on the matter. Defendant has argued publicly in favor of the Meridian Police Department's conclusion. Plaintiffs sued Defendant and John Does 1-100 in the Circuit Court for Dickson County ("the Trial Court") for distributing Christian Andreacchio's autopsy photographs online. The photographs were public records released by the Mississippi Attorney General's Office. Defendant filed a motion for summary judgment, which the Trial Court granted. Plaintiffs appeal. Plaintiffs argue that Defendant exceeded the bounds of constitutionally protected speech by distributing their son's autopsy photographs online. The undisputed material facts show that the information Defendant is alleged to have shared is truthful information, public records, concerning a matter of public significance. We hold, as a matter of law, that Plaintiffs cannot prevail on their claims. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which ANDY D. BENNETT and KENNY W. ARMSTRONG, JJ., joined.

Matthew Wilson, Tupelo, Mississippi, for the appellants, Rae Andreacchio and Todd Andreacchio.

Andrew B. Renfroe, Dickson, Tennessee, for the appellee, Joseph (aka Joel) Hamilton.

# OPINION

## Background

In February 2014, Plaintiffs' son, Christian Andreacchio, died in Meridian, Mississippi. The Meridian Police Department ruled his death a suicide. However, Plaintiffs contend that their son was murdered. Plaintiffs contend further that the Meridian Police Department conducted an incompetent investigation. Plaintiffs have, among other things, participated in an audio podcast called "Culpable" and appeared on the television show "Crime Watch Daily with Chris Hansen." In contrast, Defendant has spoken out in support of the Meridian Police Department's conclusion that Christian Andreacchio's death was a suicide. Defendant created a Facebook page called "Unjustifiable" to counter Plaintiffs' assertions. In this context, Defendant allegedly shared Christian Andreacchio's autopsy photographs as well as some of Christian's text messages. Both the autopsy photographs and text messages were public records released by the Mississippi Attorney General's Office.

In February 2020, Plaintiffs sued Defendant in the Trial Court.[1] In their first count, Plaintiffs alleged intentional and/or reckless infliction of emotional distress, stating: "Mr. Hamilton and the John Doe Defendants' decision to publish Christian's autopsy photographs and/or private text messages was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the Plaintiffs." Plaintiffs also alleged negligent infliction of emotional distress if the Trial Court found that the defendants had acted neither intentionally nor recklessly; publicity given to private facts; and negligent entrustment/failure to supervise/*respondeat superior*. Defendant filed an answer in opposition. Discovery ensued. In February 2021, Defendant filed a motion for summary judgment accompanied by a statement of undisputed material facts. In their response, Plaintiffs replied as follows, in part:

> 5. The investigation into the Decedent's death is a matter of public concern. (Complaint 24.)
> RESPONSE: UNDISPUTED

---

[1] Plaintiffs also sued John Does 1-100, explaining: "Defendants JOHN DOES 1-100 are those unknown persons, firms, corporations or other entities (hereinafter referred collectively as 'persons') who are in any way responsible to the Plaintiffs for the damages they have sustained. The John Doe Defendants include any unknown persons who have improperly disseminated the private material referenced herein. The John Doe Defendants also include persons with whom the aforesaid Mr. Hamilton colluded to facilitate the publication of said private material, including, but not limited to, any persons for whom Mr. Hamilton was acting as an agent or representative."

6. The materials allegedly published by the Defendant via Facebook which form the basis for the Plaintiffs' lawsuit consist of (i) decedent's autopsy photos and (ii) text messages between the decedent and the Plaintiff, Rae Andreacchio. (Complaint 16, 17, 20.)

RESPONSE: UNDISPUTED

7. The decedent's autopsy photos were provided by the Mississippi Attorney General's Office to the Plaintiffs in response to Public Records Requests filed by the Plaintiffs. (Plaintiffs' Responses to Defendant's Requests for Production, Bates No.: 512-540, 705). Therefore, the decedent's autopsy photos are public records.

RESPONSE: UNDISPUTED FOR THE PURPOSES OF THIS MOTION

8. Text messages from the Decedent's cell phone were provided by the Mississippi Attorney General's Office to the Plaintiffs in response to Public Records Requests filed by the Plaintiffs. (Plaintiffs' Responses to Defendant's Requests for Production, Bates No.: 483-488, 672-680, 725-726.) Therefore, the decedent's text messages are public records.

RESPONSE: UNDISPUTED FOR THE PURPOSES OF THIS MOTION

9. Plaintiffs have made no allegation that the autopsy photos allegedly published by the Defendant were in any way doctored, inaccurate, or otherwise untruthful.

RESPONSE: UNDISPUTED FOR THE PURPOSES OF THIS MOTION

10. Plaintiffs have made no allegations that the text messages published by the Defendant were in any way doctored, inaccurate, or otherwise untruthful.

RESPONSE: UNDISPUTED FOR THE PURPOSES OF THIS MOTION

Plaintiffs, citing an email reflecting that certain documents were deemed exempt from production under Mississippi law, disputed Defendant's assertion that the Mississippi Attorney General's Office released the entire case file concerning Christian Andreacchio's death. Plaintiffs also submitted their "Statement of Additional Material Facts," to wit: (1) that while the materials at issue may be public records, they are not publicly accessible; (2) that Defendant ultimately was responsible for the content of his Facebook page at all material times; (3) that Christian Andreacchio's autopsy photos were disseminated by Defendant by means of a Dropbox link accessible from the "Unjustifiable" Facebook page; and (4) that dissemination of the autopsy photos was "outrageous."

In August 2021, the Trial Court entered an order granting Defendant's motion for summary judgment. In its order, the Trial Court stated, in part:

1. The Undisputed Facts establish that the investigation into Christian Andreacchio's death is a matter of public concern and there is no allegation that the decedent's text messages or autopsy photos allegedly published by the Defendant were doctored, inaccurate, or otherwise untruthful. Therefore, this Court finds that the conduct sued upon arises from the Defendant's publication of truthful information regarding a matter of public significance.

2. Plaintiffs admit in their Statement of Undisputed Facts that the text messages and autopsy photos at issue are public records and that the Plaintiffs themselves received these records from the Mississippi Attorney General's Office in response to Public Records Requests. Moreover, Plaintiff Rae Andreacchio's Rule 72 Declaration, submitted in Response to Defendant's Motion, states in Paragraph 1 that the decedent's case file was released by the Mississippi Attorney General's Office. Consequently, this Court finds that the text messages and autopsy photos at issue are public records.

3. Although Plaintiffs correctly argue that harassing or threatening conduct is not entitled to constitutional free speech protection, the Court finds that the Plaintiffs have failed to plead harassment or threats and have made no affirmative showing of facts from which a reasonable juror could infer that any harassment or threats have occurred.

4. Plaintiffs argue that a genuine issue of material fact exists as to whether the Defendant's conduct qualifies as "outrageous," but the Motion for Summary Judgment under consideration asserts that the Defendant has an absolute defense to civil liability because the materials published involved truthful information regarding a matter of public concern and because those materials were public records. Furthermore, as a matter of law, Tennessee courts have held that the mere lawful receipt and subsequent publication of truthful information, absent more, does not go beyond the limits of decency as would constitute outrageous conduct. Fann v. City of Fairview, 905 S.W.2d 167, 172 (Tenn. Ct. App. 1994). Regardless, a finding of outrageousness is not necessary or relevant to the issues raised in Defendant's Motion for Summary Judgment, and the Court finds therefore that there is no genuine issue of material fact as to outrageousness.

5. Plaintiffs argue that a genuine issue of material fact exists as to whether the Defendant [acted] "with actual malice, intent on inflicting emotional injury," but proof of malice is irrelevant to the causes of action asserted in this case or the defenses asserted thereto. "Actual malice" refers to a distinct element which must be alleged and proved in defamation cases involving

-4-

public figures. In addition to the other elements of defamation, a public figure must also show actual malice, which is defined as knowledge that a defamatory statement was false or made with reckless disregard of whether or not it was false. New York Times Co. v. Sullivan, 376 U.S. 254 (1964). Furthermore, hostility toward a plaintiff has no bearing whether a defendant acted with actual malice: "The phrase 'actual malice' is confusing in that it has nothing to do with bad motive or ill will." Hart-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 667 n.7 (1989); Funk v. Scripps Media, Inc., 570 S.W.3d 205, 212 (Tenn. 2019). In any event, Plaintiffs have not asserted a cause of action for defamation, and thus a showing of actual malice is neither necessary nor relevant. The Court finds therefore that there is no genuine issue of material fact as to actual malice.

6. Accordingly, because the conduct sued upon involves the publication of truthful information regarding a matter of public significance, and because the information has been made available as public records, the Court finds as a matter of law that the imposition of civil liability against this Defendant for the publication of those materials would violate his free speech rights under the First Amendment and Article 1, Section 19 of the Constitution of the State of Tennessee. The Florida Star v. B.J.F., 491 U.S. 524 (1989); Cox Broadcasting Corp v. Cohn, 420 U.S. 469 (1975). Therefore, as to Counts One and Two of the Plaintiff's Complaint, for Intentional/Reckless Infliction of Emotional Distress and Negligent Infliction of Emotional Distress respectively, the Defendant's Motion is GRANTED.

7. Furthermore, because the publications at issue were public records and related to matters of public concern, this Court finds as a matter of law that the Plaintiffs cannot claim any right to privacy as to those materials. Langford v. Vanderbilt University, 287 S.W.2d 32 (Tenn. 1956); Fann v. City of Fairview, 905 S.W.2d 167 (Tenn. Ct. App. 1994). Therefore, as to Count Three of the Plaintiffs' Complaint alleging Invasion of Privacy by Publication of Private Facts, the Defendant's Motion is GRANTED.

8. Plaintiff's remaining claims for negligent entrustment and respondeat superior are derivative claims. Having disposed of the Plaintiffs' other causes of action herein, this Court finds that Plaintiffs cannot maintain their derivative causes of action. Therefore, as to Count Four of the Plaintiff's Complaint, the Defendant's Motion is GRANTED.

Plaintiffs timely appealed to this Court.

**Discussion**

-5-

Although not stated exactly as such, Plaintiffs raise the following issue on appeal: whether the Trial Court erred in holding that the First Amendment, the Tennessee Constitution, and/or the Public Records Doctrine insulate Defendant for liability from intentional or, alternatively, negligent infliction of emotional distress for distribution of Christian Andreacchio's autopsy photographs.

Regarding the standard of review for cases disposed of by summary judgment, the Tennessee Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

***

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary

judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC,* 477 S.W.3d 235, 250, 264-65 (Tenn. 2015) (emphases in original).

This appeal involves a claim of intentional or, alternatively, negligent infliction of emotional distress. "The elements of an intentional infliction of emotional distress claim are that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012) (citations omitted). "The elements of a claim for negligent infliction of emotional distress include the elements of a general negligence claim, which are duty, breach of duty, injury or loss, causation in fact, and proximate causation." *Id*. at 206 (citation and footnote omitted).

This appeal implicates constitutional protection of speech, as well. The First Amendment of the United States Constitution states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Article I, Section 19 of the Tennessee Constitution contains its own provision regarding free speech, stating:

That the printing presses shall be free to every person to examine the proceedings of the Legislature; or of any branch or officer of the government,

and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions, is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty. But in prosecutions for the publication of papers investigating the official conduct of officers, or men in public capacity, the truth thereof may be given in evidence; and in all indictments for libel, the jury shall have a right to determine the law and the facts, under the direction of the court, as in other criminal cases.

In support of their argument that Defendant's distribution of Christian Andreacchio's autopsy photographs was not protected speech, Plaintiffs cite among other things the Post-Mortem Examination Act found at Tenn. Code Ann. § 38-7-101, *et seq*. Specifically, Tenn. Code Ann. § 38-7-119 provides, in part:

(a)(1) Except as provided in subsection (c), it is an offense for the chief medical examiner, a county medical examiner, or pathologist designated pursuant to § 38-7-105, or any agent or employee of the chief medical examiner, a county medical examiner, or pathologist, to contract with or grant authorization to an unauthorized person or an external entity to photograph, videotape, or otherwise capture visual images, or audio recordings in whatever form of a deceased human body, a human autopsy or a body immediately prior to, during or immediately following an autopsy.

(2) No person shall distribute, publish or otherwise disseminate any autopsy photographs, videotape or other visual image or any autopsy audio recording without the written consent of the next of kin or personal representative in the order established pursuant to subdivision (c)(1)(A), unless such use is consistent with subdivision (c)(1)(B), (c)(1)(C) or (c)(1)(D).

Tenn. Code Ann. § 38-7-119 (West July 1, 2009 through present).

Defendant argues that Plaintiffs waived their argument concerning an alleged violation of the Post-Mortem Examination Act by failing to raise it below. Indeed, issues that have not been properly raised in the trial court proceedings generally cannot be argued for the first time on appeal. *Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006). In their reply brief, Plaintiffs assert that they are not arguing that Defendant violated the Port-Mortem Examination Act, per se. Rather, Plaintiffs say they invoke the Post-Mortem Examination Act to argue that ruling in Defendant's favor would undermine the validity of the Act going forward. Nevertheless, the record reflects that Plaintiffs failed to present to the Trial Court any manner of argument regarding the Post-Mortem Examination Act; they simply did not bring it up. This being so, we discern no reason to depart from our general

rule that issues not properly raised in the trial court proceedings cannot be argued for the first time on appeal. Therefore, we will not consider Plaintiffs' argument rooted in the Post-Mortem Examination Act, which they have raised for the first time on appeal.

Plaintiffs also cite the case of *Reid v. Pierce County*, 136 Wn.2d 195, 961 P.2d 333 (1998), from the Supreme Court of Washington. In *Reid*, which involved multiple consolidated cases, government employees took photographs of the autopsy of former Washington governor Dixy Lee Ray and showed them at cocktail parties. 961 P.2d at 335. The Supreme Court of Washington stated that "the conduct complained of in the cases before us is the type that would cause a reasonable person to exclaim, 'outrageous,'…." *Id*. at 338. Plaintiffs argue that a jury comprised of reasonable persons from Dickson County likely would reach the same conclusion as did the Supreme Court of Washington. The *Reid* Court ultimately held that the plaintiffs therein could maintain an action for invasion of privacy under the common law, stating:

> We hold the immediate relatives of a decedent have a protectable privacy interest in the autopsy records of the decedent. That protectable privacy interest is grounded in maintaining the dignity of the deceased. We also hold the trial court erred in granting the County's CR 12(b)(6) and summary judgment motions on this issue. The County's actions in these cases are sufficiently egregious to enable the families of the deceased to maintain their own action. Plaintiffs have alleged sufficient facts to require trial on this issue.

*Reid*, 961 P.2d at 342. In addition, Plaintiffs cite *Purifoy v. Mafa*, 556 S.W.3d 170 (Tenn. Ct. App. 2017), a case about stalking, for the proposition that freedom of speech does not extend to harassment or intimidation. *Id*. at 191-92.

Defendant points out that *Reid* is not controlling law in Tennessee and that, in any event, it is inapposite. Defendant notes that the allegations in *Reid* were against government workers, whereas he is a private citizen. Defendant instead cites among other cases *Fann v. City of Fairview*, 905 S.W.2d 167 (Tenn. Ct. App. 1994), in which this Court dismissed a claim for invasion of privacy regarding a newspaper's publication of confidential information related to a political candidate's expunged criminal record. *Id*. at 172. This Court stated: "We hold that *The Review Appeal*'s receipt of the information, including the expunged material, was not unlawful….We further hold that the newspaper articles clearly concerned 'a matter of public significance' as the truthful information concerned a candidate for public office." *Id*. This Court continued: "We reiterate that Fann's allegations as to Franklin Publishing merely concern the newspaper's receipt of this information. Moreover, the record fails to suggest that the newspaper, on its own initiative, wrongfully discovered the information. As such, we do not find the mere lawful receipt

-9-

and subsequent publication of truthful information regarding a candidate for public office, absent more, to go beyond the limits of decency….” *Id*. With respect to the *Purifoy* case cited by Plaintiffs, Defendant points out that there is no allegation of stalking in this case.

Defendant also cites *Harris v. Horton*, 341 S.W.3d 264 (Tenn. Ct. App. 2009), *overruled on other grounds by Rogers v. Louisville Land Co.*, 367 S.W.3d 196 (Tenn. 2012), a case in which a first responder showed post-mortem photographs to a high school class and thereafter was sued by the decedent’s family, for the proposition that there is no invasion of privacy when the matter publicized is of legitimate public concern. *Id*. at 273-74. This Court in *Harris*, acknowledging the aforementioned *Reid* case, opined:

> In the case at bar, we agree with the Washington court in *Reid* that the Plaintiffs may have a protectable privacy interest in photographs of their deceased relative….We proceed, then, to look at the elements of this invasion of privacy claim to determine if the trial court correctly granted summary judgment to the Defendants.

> ***

> The comments to Section 652D of the Restatement (Second) of Torts go on to explain that, even if the matters that are publicized are “private” and even if the publicity would be “highly offensive to a reasonable person,” the claim may not be actionable where the matter publicized is a matter of legitimate public concern. *See* § 652D cmt.d. (“When the subject-matter of the publicity is of legitimate public concern, there is no invasion of privacy.”) Here, the trial court found that the accident in which Jeremy was killed and its consequences were a matter of legitimate public concern, and pointed to the article in the local newspaper about the accident and Jeremy’s resulting death.

> ***

> We must agree with the trial court’s conclusion that, as a result of Jeremy’s tragic involvement in the fatal vehicular accident, he became an involuntary public figure within the meaning of the comments to section 652D of the Restatement (Second) of Torts. Moreover, the fact to which publicity was given, namely, the appearance of Jeremy’s body as depicted in the accident-scene photographs, is related to the event that gave rise to his status as an involuntary public figure. Therefore, assuming (without deciding) that the accident-scene photographs are private and that displaying the photographs at a driver’s education class constitutes “publicity” that

would be highly offensive to a reasonable person, we must conclude that the Plaintiffs cannot recover for invasion of privacy by publicity given to a private fact. Thus, we affirm the trial court's grant of summary judgment in favor of the Defendants on this claim.

*Harris*, 341 S.W.3d at 272-74.

Upon our review of the authorities, we conclude that the jurisprudence protecting the sharing of truthful information regarding matters of public significance, notably as articulated by this Court in *Fann*, is more instructive to the appeal at bar than *Reid*, which in any event is not controlling law in Tennessee. The facts of *Reid* differ from the facts of the present case, as well. As Plaintiffs themselves acknowledged, the investigation into Christian Andreacchio's death is a matter of public concern. Indeed, whether the official investigation into Christian Andreacchio's death was mishandled, as Plaintiffs have argued, is a matter of public significance.[2] Plaintiffs have publicly expressed their views on the matter, as is their right. Defendant has publicly expressed a contrary view, as is his right. This is the sort of "free communication of thoughts and opinions" protected by Article 1, Section 19 of the Tennessee Constitution. It was within this context that Defendant is alleged to have distributed Christian Andreacchio's autopsy photographs online. There is no hint in the record that Defendant obtained these photographs by unlawful means. On the contrary, they were public records obtained through the Mississippi Attorney General's Office. Further, there is no suggestion that the photographs were altered or manipulated in any way. Defendant thus is alleged to have disseminated truthful information—public records from a sister state, no less—concerning a matter of public significance. Without more, this activity cannot be deemed "outrageous" in the legal sense. Rather, it is free expression. Additionally, Plaintiffs' attempt to equate Defendant's actions with intimidation or harassment is without merit as no intimidation or harassment of Plaintiffs by Defendant has been alleged or shown here.

Plaintiffs' revulsion at, and opposition to, the online distribution of photographs of their deceased son's body is, of course, completely understandable. Respectfully, however, that is not dispositive of the constitutional issues at stake. Under *Fann*, and, more crucially, the First Amendment and Article 1, Section 19 of the Tennessee Constitution, Defendant cannot be held liable for sharing truthful information, here public records, concerning the investigation into Christian Andreacchio's death, a matter of public significance. That the truthful information concerning this matter of public significance is of a deeply sensitive nature neither makes the information any less truthful nor makes the matter any less publicly significant. In this case, Defendant has filed a properly supported motion for summary judgment. He has successfully established a defense to the claims against him,

---

[2] We take absolutely no position on the merits of this debate one way or the other.

which Plaintiffs have failed to overcome.  We hold, as a matter of law, that Plaintiffs cannot prevail on their claims.[3]  We affirm the Trial Court in its grant of summary judgment to Defendant.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below.  The costs on appeal are assessed against the Appellants, Rae Andreacchio and Todd Andreacchio, and their surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

---

[3] While neither the Trial Court nor the parties focus on the disposition as to the John Doe defendants, our holding resolves all issues as to the John Doe defendants, as well.