# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 21, 2024 Session

## ANNIE J. JONES, BY AND THROUGH HER CONSERVATORSHIP, JOYCE SONS a/k/a CALISA JOYCE SONS v. LIFE CARE CENTERS OF AMERICA d/b/a LIFE CARE CENTER OF TULLAHOMA

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Coffee County**
**No. 2020-CV-46643  William A. Lockhart, Judge**

———————————————————

**No. M2022-00471-SC-R11-CV**

———————————————————

In this appeal regarding Tennessee's survival statute, Tennessee Code Annotated section 20-5-102, we hold that a cause of action for invasion of privacy based on intrusion upon seclusion does not abate upon the death of the person whose privacy was invaded. Here, an elderly woman with severely impaired cognitive functioning was a resident of the defendant skilled nursing facility. While an employee of the facility was helping the resident take a shower, the employee took a personal video call with her incarcerated boyfriend. During the call, the employee propped her cell phone in the shower in a way that displayed the resident's nude body to the boyfriend. The resident's conservator sued the defendant facility claiming, *inter alia*, invasion of the resident's privacy. The trial court granted summary judgment in favor of the facility, and the plaintiff appealed. While the appeal was pending, the resident died, and her estate was substituted. The Court of Appeals reversed; it held the complaint stated a claim for invasion of privacy based on intrusion upon seclusion, and that the claim did not abate upon the death of the resident. We granted the defendant facility permission to appeal on abatement. Tennessee Code Annotated section 20-5-102 provides that no civil action based on "wrongs" abates upon the death of either party, "except actions for wrongs affecting the character of the plaintiff." On appeal, the defendant facility argues that the claim abated either because section 20-5-102 does not apply at all, or because the character exception in the statute applies, since a claim for intrusion upon seclusion is an action for "wrongs affecting the character of the plaintiff." We hold that the survival statute, section 20-5-102, applies to the claim of intrusion upon seclusion, and that the exception for actions for "wrongs affecting the character of the plaintiff" does not apply. Therefore, we affirm the holding of the Court of Appeals that the claim for intrusion upon seclusion did not abate upon the death of the resident whose privacy was invaded.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed; Remanded to the Circuit Court**

HOLLY KIRBY, C.J., delivered the opinion of the court, in which JEFFREY S. BIVINS, ROGER A. PAGE, SARAH K. CAMPBELL, and DWIGHT E. TARWATER, JJ., joined.

Alan S. Bean and K. Nicole Poole, Franklin, Tennessee, for the appellant, Life Care Centers of America, Inc. d/b/a Life Care Center of Tullahoma.

Richard D. Piliponis, Benjamin J. Miller, and Sarah L. Martin, Nashville, Tennessee, for the appellee, Calisa Joyce Sons as Administrator Ad Litem for the Estate of Annie J. Jones.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

In July 2017, Annie J. Jones became a resident of Defendant/Appellant Life Care Centers of America, Inc. d/b/a Life Care Center of Tullahoma ("Life Care"), a skilled nursing facility in Tullahoma, Tennessee. Ms. Jones had pre-existing dementia, depression, and anxiety. Her cognitive functioning was severely impaired; she required help with daily functions.

On February 12, 2019, a certified nursing aide ("CNA") employed by Life Care was helping Ms. Jones bathe in the facility's shower room. The CNA received a video call from her incarcerated boyfriend; she propped her cell phone on a shelf in the shower room to continue talking with her boyfriend while she helped Ms. Jones bathe. During the call, one Life Care employee called Ms. Jones by her first name while CNAs undressed her. Ms. Jones's nude body was visible to the CNA's incarcerated boyfriend during the video call. None of the Life Care employees involved in the incident reported it to Life Care.

Meanwhile, the CNA's incarcerated boyfriend's video visitation was being monitored, and the person reviewing his communications saw the video of the call with the Life Care CNA, including Ms. Jones's nude body. The video was reported to law enforcement, who identified the CNA whose boyfriend placed the video call.

On February 13, 2019, the day after the incident, law enforcement notified Life Care of the incident, including the identity of the CNA who took the video call.[1] Life Care did its own investigation and viewed the video to identify other employees who witnessed the incident. Life Care terminated the employment of the CNA who took the boyfriend's video call, and the CNA was charged with unlawful photography in violation of privacy. Life Care also terminated the employment of witness employees who failed to report the CNA's use of a cell phone in a patient area, which is prohibited by facility policy.

As part of their investigation, Life Care assessed Ms. Jones. She was examined by a physician and interviewed by social services. The record contains no indication that Ms. Jones ever mentioned the shower incident, nor any indication that anyone mentioned it to her. By the time the shower incident occurred, Ms. Jones's dementia was advanced. She showed no signs of increased anxiety or distress from the incident.

On February 14, the day after Life Care learned of the shower incident, a supervisor at Life Care telephoned Ms. Jones's daughter and conservator, Plaintiff/Appellee Joyce Sons.[2] Ms. Sons was informed that a video recorded by a CNA showed Ms. Jones in the background. About a week later, the same supervisor called Ms. Sons and told her that the incident involved a video call between a CNA and her incarcerated boyfriend that showed Ms. Jones in the shower. On March 4, 2019, Life Care's Interim Executive Director sent Ms. Sons a letter reporting the incident and Life Care's response. The letter said that an employee took a video call "in a patient area" in violation of policy and there was a "breach of patient privacy," and it detailed the steps Life Care had taken:

> On 2-13-19, area law enforcement notified facility staff that a breach of patient privacy had occurred when an incarcerated subject had place[d] a video call to an employee during working hours. The employee was identified as a current associate and the date 2-12-19 was confirmed a scheduled working day. . . . [The v]ideo and [Ms. Jones's] first name was referenced during the conversation that occurred in a patient care area.

The letter expressed regret for the "breach of protected information."

---

[1] Life Care's March 4 letter to Ms. Sons said that Life Care reported the incident to Adult Protective Services, area Ombudsman, and the Tennessee Department of Health, and those agencies investigated as well.

[2] In 2019, Ms. Sons became Ms. Jones's court-appointed conservator of both her person and property after a physician diagnosed Ms. Jones with psychological and physical impairment. The conservatorship gave Ms. Sons the "right to prosecute and defend lawsuits."

On February 12, 2020, Ms. Sons, in her capacity as conservator of Ms. Jones ("Plaintiff"), filed a complaint against Life Care in the Circuit Court of Coffee County. The complaint alleged that the actions of the Life Care CNA in "[v]ideoing" Ms. Jones "while being showered violated her privacy and dignity." It asserted a claim for negligence under "the Tennessee Medical Malpractice Act, Tenn. Code Ann. § 29-26-115, et seq." and a generalized claim for invasion of privacy with allegations of gross negligence and willful, reckless, or intentional misconduct. The complaint challenged the constitutionality of Tennessee's statutory cap on non-economic damages.[3] It sought compensatory damages, special damages, and punitive damages.

Subsequently, Plaintiff filed an amended complaint that omitted the challenge to the constitutionality of the statutory caps. The remainder of the First Amended Complaint did not change the Plaintiff's allegations in any way relevant to this appeal.

On April 27, 2020, Life Care filed an answer admitting that two of its employees "gave Ms. Jones a shower on or about February 12, 2019, and that one employee accepted and participated in video calls with a male caller." The answer admitted that "Ms. Jones was visible to some extent on the video." Life Care denied the incident gave rise to a cause of action or that Plaintiff is entitled to recover any damages.

After discovery, Life Care filed a motion for summary judgment, based on the First Amended Complaint, asserting there was no genuine issue of material fact about "the lack of any cognizable injury under Tennessee law." In support, Life Care attached an affidavit by its medical expert, Larry Tune, M.D.,[4] and excerpts from the deposition of Ms. Sons.

Based on Ms. Jones's medical records, Dr. Tune opined that Ms. Jones would not have been able to understand or perceive the shower incident and consequently suffered no physical, mental, or emotional injury from it. His affidavit concluded that, "to a reasonable degree of medical certainty, . . . this incident had no impact on Ms. Jones."

In Ms. Sons's deposition, she acknowledged that Ms. Jones had never mentioned the shower incident to her, and that she was not aware of anyone else telling Ms. Jones what happened. Ms. Sons conceded she could not say Ms. Jones had any physical issues, sleeplessness, depression, anxiety, or special medical treatment because of the shower incident. Life Care claimed Dr. Tune's affidavit and the deposition of Ms. Sons,

---

[3] Tenn. Code Ann. § 29-39-102.

[4] Dr. Tune is a professor of psychiatry and neurology and has practiced and served as medical director in several long-term care facilities in Georgia.

considered together, showed that Plaintiff cannot prove "any recoverable damages" and sought summary judgment on that basis.

In opposition to Life Care's motion for summary judgment, Plaintiff filed a response and a motion to amend her complaint. Plaintiff clarified she had not claimed "physical, mental, or emotional injury" but instead "claimed injuries of loss of privacy and dignity." In support, Plaintiff presented the affidavit of medical expert Jonathan Klein, M.D.[5] After reviewing Ms. Jones's records, Dr. Klein opined that, to a reasonable degree of medical certainty, Ms. Jones "suffered a loss of privacy and dignity due to the inadequate care and treatment provided by Life Care."

In the alternative, Plaintiff asked the trial court to reserve its ruling on Life Care's summary judgment motion and permit her to amend her complaint to more explicitly allege negligent supervision and invasion of privacy by intrusion upon seclusion.[6] Life Care opposed the request to amend the complaint, arguing that the proposed amendments would be futile without proof of actual injury.

In March 2022, the trial court denied Plaintiff's motion to amend the complaint and granted Life Care's motion for summary judgment. The trial court agreed with Life Care that, to defeat the motion for summary judgment, Plaintiff had to offer proof of "actual injury or loss" in the form of "physical, mental or emotional injury." It denied Plaintiff's motion to amend the complaint as futile, reasoning that because it was undisputed that "Ms. Jones is unaware that the incident occurred," Plaintiff cannot prove injury from invasion of privacy such as "personal humiliation, mental anguish or similar damages." For that reason, the trial court granted summary judgment in favor of Life Care.

While the case was pending in the trial court, Ms. Jones died from causes unrelated to the case. An April 2022 order substituted Ms. Sons to pursue the lawsuit as administrator ad litem of Ms. Jones's estate.

Plaintiff appealed. On appeal, the intermediate appellate court considered three issues: (1) whether the trial court erred in granting Life Care's motion for summary judgment; (2) whether the trial court erred in denying Plaintiff's motion to amend her

---

[5] Dr. Klein is a licensed physician in Virginia with training and knowledge in nursing home and hospital care.

[6] Plaintiff did not attach a proposed Second Amended Complaint to the response to Life Care's motion for summary judgment, but instead asked the trial court to permit amendment of the First Amended Complaint to include claims of negligent supervision and intrusion upon seclusion, both based on the CNA's act of participating in the video call while bathing Ms. Jones.

complaint to include a claim for invasion of privacy by intrusion upon seclusion and negligent supervision; and (3) whether an invasion of privacy action survives the death of the individual whose privacy was invaded.[7] *Jones by & Through Sons v. Life Care Ctrs. of Am.*, No. M2022-00471-COA-R3-CV, 2023 WL 3476523, at *2 (Tenn. Ct. App. May 16, 2023), *perm. app. granted*, (Tenn. Nov. 21, 2023).

As to the first issue, the Court of Appeals reversed the trial court's grant of summary judgment in favor of Life Care. *Id.* at *11. It reasoned that the gravamen of Plaintiff's claim is for invasion of privacy by means of intrusion upon seclusion, and it held that "actual damages are not an essential element of a claim for intrusion upon seclusion." *Id.* at *7–10.[8]

---

[7] The third issue was raised by the appellate court. After oral argument, the Court of Appeals entered an order directing the parties to brief the question of whether the Plaintiff's claim survived Ms. Jones's death as an issue not raised by the parties:

> This matter was argued before the Court on January 5, 2023. Following argument and during its review of the issues raised by the parties, the Court came upon an issue that was not raised by either party. The issue is "whether an action for the invasion of privacy can be maintained after the death of the individual whose privacy was invaded." *See West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 648 (Tenn. 2001) (citing Section 652I of the *Restatement (Second) of Torts* cmt. a–c (1977)) ("[W]hich recognizes that the right to privacy is a personal right. As such, the right . . . may not be assigned to another, nor may it be asserted by a member of the individual's family, even if brought after the death of the individual.").
>
> Because the parties have not briefed this issue, and acting pursuant to the reasoning in *State v. Bristol*, 654 S.W.3d 917, 928 (Tenn. 2022), the parties are afforded the opportunity to be heard on this issue.

*Jones*, 2023 WL 3476523, at *10 n.5. The parties then filed supplemental briefs on the issue. *Id.* at *10.

[8] The Court of Appeals reasoned:

> The present case is a rare one in which Ms. Jones was unaware of the intrusion on her private affairs and, as such, provides no evidence of mental or emotional ramifications. Additionally, it is undisputed that she suffered no actual or economic damages. Even so, we would consider it a detriment to public policy to condone intrusions upon the seclusion of the most vulnerable—those unable to comprehend that the intrusion is occurring— without the possibility of redress or consequence. Further, the above authorities reveal the long-held position that the intrusion itself is the injury, that a claim for intrusion upon seclusion does not require actual damages to survive a motion for summary judgment, and that Ms. Jones is afforded the opportunity to "recover damages for the deprivation of [her] seclusion." Restatement (Second) of Torts § 652H cmt. a. (1977). The Restatement treats

The appellate court next reversed the trial court's denial of the Plaintiff's motion to amend the complaint. *Id.* at *10. Because intrusion upon seclusion does not require actual damages, it reasoned, a grant of leave to amend the complaint would not be futile, so it directed the trial court to permit the Plaintiff to amend. *Id.*

Finally, the Court of Appeals considered the third issue of whether the Plaintiff's claim survived the death of Ms. Jones. *Id.* at *10–11. The appellate court held that it did, based on Tennessee's survival statute, Tennessee Code Annotated section 20-5-102, which says that civil actions "founded on wrongs or contracts" are not abated by the death of either party, "except for wrongs affecting the character of the plaintiff." *Id.* at *11 (citing Tenn. Code Ann. § 20-5-102). The appellate court reasoned: "Here, Plaintiff's claims and Defendant's actions are not of a slanderous or defamatory nature that affect the character of Ms. Jones. Accordingly, Plaintiff's claims survive the death of Ms. Jones pursuant to Tennessee Code Annotated § 20-5-102." *Id.*

This Court granted Life Care's application for permission to appeal.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

Life Care applied for permission to appeal pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure. In its application, Life Care identified the issues on which it sought permission to appeal as: (1) "In Tennessee, does a cause of action for invasion of privacy for intrusion upon seclusion survive the death of the individual whose privacy was invaded[,]" and (2) "Is Tenn. Code Ann. § 20-5-102 a 'particular' type of statute that provides an exception to § 652I of the Restatement (Second) of Torts (1977), adopted by The Supreme Court in 2001 in *West v. Media Gen. Convergence, Inc.*)?"

After this Court granted permission to appeal, Life Care filed an appellate brief in which it raised two additional issues: (1) "Did the Tennessee Court of Appeals err when it reversed the trial court's summary judgment award to Life Care on all of Plaintiff's claims when Plaintiff could not prove that Ms. Jones suffered any injuries or harm which would not otherwise have occurred?" and (2) "Did the Tennessee Court of Appeals err when it concluded the trial court abused its discretion by denying Plaintiff's motion to amend to add a claim for invasion of privacy?" Plaintiff/Appellee's responsive brief responded to the merits of all issues raised by Life Care in its brief, including the new ones.

---

such damages for the privacy harm of deprivation of seclusion as distinct from damages for emotional distress and personal humiliation. *See id.* at § 652H cmts. a & b.

*Jones*, 2023 WL 3476523, at *9.

After the appellate briefs were filed, this Court issued an order noting that Life Care's brief included issues not raised in its Rule 11 application. The order directed the parties to be prepared to address at oral argument whether Life Care had waived issues raised in its brief that were not included in its Rule 11 application.[9]

At oral argument, counsel for Life Care conceded its brief raised issues that were not included in its Rule 11 application and acknowledged caselaw indicating that, to preserve issues on appeal, appellants must include them in their Rule 11 application. Counsel argued, however, that Rules 13(a) and (b) of the Tennessee Rules of Appellate Procedure, taken together, give this Court discretion to consider additional issues, and counsel asked the Court to consider all issues raised in Life Care's brief, in the interest of judicial economy, because the parties had briefed all of the issues and the case is before the Court.[10]

"Appellants and parties seeking relief under Tenn. R. App. P. 11 must include in their application for permission to appeal and in their brief a statement of the issues they desire to present to the court and an argument with respect to each of the issues presented." *Hodge v. Craig*, 382 S.W.3d 325, 334–35 (Tenn. 2012). In general, a "party who fails to adequately raise an issue in a Rule 11 application waives the issue." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887 (Tenn. 2019) (citing *Hodge*, 382 S.W.3d at 335).

Life Care is correct that, to achieve fairness and justice, the Court has discretion to consider issues that have not been properly preserved or presented. *In re Kaliyah S.*, 455 S.W.3d at 540. That discretion, however, is sparingly exercised. Appellate review is

---

[9] The order stated:

> This Court has stated that "[o]ur scope of review on appeal is limited to the issues raised in [an appellant's] Tennessee Supreme Court Rule 11 application for permission to appeal," and that "[a] party who fails to adequately raise an issue in a Rule 11 application waives the issue." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887 (Tenn. 2019) (citing *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012)).

> The Court requests that the parties be prepared to address at oral argument whether Life Care has waived issues stated in its brief that were not raised in its application for permission to appeal.

[10] *In re Kaliyah S.*, 455 S.W.3d 533, 540 (Tenn. 2015) ("Rules 13(b) and 36(a) of the Tennessee Rules of Appellate Procedure, considered together, give appellate courts considerable discretion to consider issues that have not been properly presented in order to achieve fairness and justice.").

generally limited to issues that have been presented for review. *Hodge*, 382 S.W.3d at 334–35 (citing Tenn. R. App. P. 13(b); *State v. Bledsoe*, 226 S.W.3d 349, 353 (Tenn. 2007)).

Here, Life Care offers no compelling reason for the Court to consider issues raised in its brief that were not presented in its Rule 11 request for permission to appeal. *Cf. In re Kaliyah S.*, 455 S.W.3d at 540 (question impacted biological parents' fundamental constitutional right to the care and custody of their child, "an important question of law and a matter of great public interest."). Under these circumstances, we decline to exercise our discretion to consider the additional issues Life Care raised in its brief that were not included in its Rule 11 application.[11]

Thus, we limit our review to the issues properly raised in Life Care's request for permission to appeal. In this opinion, we combine them and restate them slightly as whether the Court of Appeals correctly held that Plaintiff's claim for invasion of privacy by intrusion upon seclusion survived the death of Ms. Jones, the person whose privacy was invaded, under Tennessee Code Annotated section 20-5-102.

This issue requires us to interpret a statute, section 20-5-102. Statutory interpretation is a question of law, which is reviewed de novo with no presumption of correctness. *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 839 (Tenn. 2019).

## ANALYSIS

In this appeal, Life Care argues that Plaintiff's claim for invasion of privacy based on intrusion upon seclusion abated upon Ms. Jones's death. For that reason, Life Care contends, it is entitled to summary judgment.

To address this issue, we consider first the history of Tennessee's survival statute, with particular focus on the statutory exception for "actions for wrongs affecting the character of the plaintiff." Tenn. Code Ann. § 20-5-102 (2018). We then apply Tennessee Code Annotated section 20-5-102 to intrusion upon seclusion to determine whether this claim abated upon the death of Ms. Jones.

---

[11] Plaintiff raises two additional issues in her brief related to the issue regarding damages in Life Care's brief that we deem waived. Our decision not to hear Life Care's issue on damages pretermits the additional issues raised in Plaintiff's brief.

Under the common law, "when a party to an action died while the case was pending[,] the action abated." *Timmins v. Lindsey*, 310 S.W.3d 834, 840 (Tenn. Ct. App. 2009). *See also Mid-S. Pavers, Inc. v. Arnco Const., Inc.*, 771 S.W.2d 420, 422 (Tenn. Ct. App. 1989); *McDaniel v. Mulvihill*, 263 S.W.2d 759, 761 (Tenn. 1953); *Benton v. Knoxville News-Sentinel Co.*, 130 S.W.2d 106 (Tenn. 1939). In the early 1800s, however, Tennessee's General Assembly altered the common law by enacting statutes which "provid[e] for the survival of nearly every form of action." *Harris v. Nashville Trust Co.*, 162 S.W. 584, 587 (Tenn. 1914). *See Warren v. Furstenheim*, 35 F. 691, 697 (C.C.W.D. Tenn. 1888) ("[O]ur act of 1836 first established the existing rule that all suits commenced might be revived, without regard to whether the cause of action, without such suits, would have survived or not").[12] Tennessee was not alone in altering the common law on abatement. *McDaniel*, 263 S.W.2d at 761 ("This [common law] rule [of abatement] has been abolished by statute in perhaps all of the States.").

The current version of Tennessee's "survival statute" is codified at Tennessee Code Annotated sections 20-5-101 and 102. Section 20-5-101 provides: "Actions do not abate by the death or other disability of either party, or by the transfer of any interest in the action, if the cause of action survives or continues." Tenn. Code Ann. § 20-5-101. This statute "permits the decedent's cause of action to survive the death, so that the decedent, through his or her estate, recovers damages that would have been recovered by the decedent had he or she lived to the resolution of the case." *Timmins*, 310 S.W.3d at 840. Section 20-5-102, the subject of this appeal, provides:

> No civil action commenced, whether founded on wrongs or contracts, *except actions for wrongs affecting the character of the plaintiff*, shall abate by the

---

[12] The 1836 Act provided:

> Be it enacted by the General Assembly of the State of Tennessee, That hereafter when any person may depart this life, by or against whom an action of detinue, or trover, or any civil action, whether the same be founded on wrongs or contracts, except actions for wrongs affecting the person or character of the plaintiff, may have commenced, it shall be lawful to renew such suit by or against the personal representative of such decedent, subject to the same rules, regulations and restrictions, that actions founded upon contract are renewed by the existing laws.

Act of February 17, 1836, ch. 77, § 1, 1835-1836 Tenn. Pub. Acts 184. As can be seen, the exception to the survival statute in its original form included wrongs affecting the "person" of the plaintiff; this was modified in 1858 to delete reference to the "person" of the plaintiff, leaving only wrongs affecting the "character of the plaintiff." *Furstenheim*, 35 F. at 697 (describing the evolution of law on abatement and survival of causes of action in Tennessee).

death of either party, but may be revived; nor shall any right of action arising hereafter based on the wrongful act or omission of another, *except actions for wrongs affecting the character*, be abated by the death of the party wronged; but the right of action shall pass in like manner as the right of action described in § 20-5-106.

Tenn. Code Ann. § 20-5-102 (emphasis added).[13] As can be seen, this section includes an express exception for "actions for wrongs affecting the character of the plaintiff." *Id.*

*West and the Restatement (Second) of Torts*

Life Care argues first that section 20-5-102 does not apply to the Plaintiff's claim at all, so the claim abated upon the death of Ms. Jones. In support, Life Care points to this Court's decision in *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640 (Tenn. 2001).

In *West*, the United States District Court for the Eastern District of Tennessee certified to this Court the question of "whether Tennessee recognizes the separate tort of false light invasion of privacy." *Id.* at 643. As background to consider that question, the Court in *West* briefly recounted the history of "[t]he protection of privacy rights," noting that Dean William L. Prosser's "analysis of invasion of privacy resulted in the classification of that tort into four separate causes of action," each of which represented a different type of "interference with the right of the plaintiff 'to be let alone.'" *Id.* at 642 (citing William L. Prosser, *Privacy*, 48 Calif. L. Rev. 383 (1960); William L. Prosser, *Law of Torts* § 117 (4th ed. 1971). *West* quoted Section 652A of the *Restatement (Second) of Torts* (Am. L. Inst. 1977), which set out and described the "four categories" of invasion of privacy:

(1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.

(2) The right of privacy is invaded by:

(a) unreasonable intrusion upon the seclusion of another, as stated in § 652B; or

(b) appropriation of the other's name or likeness, as stated in § 652C; or

---

[13] "Because the survival statute abrogates the common law rule, the statutory method for preserving either an existing action or a vested cause of action not yet commenced must be strictly followed." *Timmins*, 310 S.W.3d at 840. The parties do not dispute that the procedural steps were properly followed in this case.

(c) unreasonable publicity given to the other's private life, as stated in § 652D; or

(d) publicity that unreasonably places the other in a false light before the public, as stated in § 652E.

*Id.* at 643 (quoting *Restatement (Second) of Torts* § 652A (Am. L. Inst. 1977)).[14]

*West* recognized the last of the four privacy torts, false light invasion of privacy, as actionable in Tennessee. *Id.* at 645. In describing the scope of that tort, *West* adopted Section 652I of the *Restatement (Second) of Torts*:

[F]or purposes of clarification, this Court adopts Section 652I of the *Restatement (Second) of Torts* (1977) which recognizes that the right to privacy is a personal right. As such, the right cannot attach to corporations or other business entities, may not be assigned to another, nor may it be asserted by a member of the individual's family, even if brought after the death of the individual. *Restatement (Second) of Torts* § 652I cmt. a-c (1977). Therefore, only those persons who have been placed in a false light may recover for invasion of their privacy.

*West*, 53 S.W.3d at 648. Thus, *West* specifically referenced Section 652I in relation to the tort of false light invasion of privacy.

Still, relying on this holding in *West*, Life Care urges this Court to apply, to the instant case, comment b to section 652I of the *Restatement (Second) of Torts*. Comment b states:

In the absence of statute, the action for the invasion of privacy cannot be maintained after the death of the individual whose privacy is invaded. In a few states particular statutes permit the survival of an action for invasion of privacy that has occurred before death . . . .

*Restatement (Second) of Torts* § 652I cmt. b. Life Care argues Tennessee Code Annotated section 20-5-102 is not a "particular" type of statute, within the meaning of Comment b, that would be an exception to the general statement in section 652I that invasion of privacy actions cannot be maintained after the death of the person whose privacy was invaded.

---

[14] *See also* Sohail Aftab, *Chapter 3 The Concept of the Right to Privacy*, 109 *IUS Gentium: Comparative Perspectives on Law and Justice* 39, 75 (2024) (quoting Prosser, *Privacy*, *supra*, at 389).

In effect, Life Care argues that a comment to the Restatement takes primacy over the text of Tennessee Code Annotated section 20-5-102, and it asks us to restrict Tennessee courts from applying the statute unless it comports with limitations in that comment. But our interpretation must be governed first and foremost by the text of the statute. To interpret section 20-5-102, "[t]he text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Welch v. Oaktree Health and Rehab. Ctr. LLC*, 674 S.W.3d 881, 893 (Tenn. 2023) (quoting *Coffee Cnty. Bd. of Educ.*, 574 S.W.3d at 839). Thus, our task is to focus on the text of section 20-5-102 and apply it to the facts in this case.

Moreover, *West* cannot be stretched as far as Life Care urges. *West* adopted Sections 652F–I of the *Restatement (Second) of Torts* "[w]ith respect to the parameters of the tort of false light." *Id.* at 648. While false light and intrusion upon seclusion are both invasion of privacy claims, they are separate torts with distinct elements. *See id.* at 642 (citing Prosser, *Privacy*, *supra*, at 383; Prosser, *Law of Torts* § 117, *supra*, at 804). *West* discussed Section 652I of the *Restatement (Second) of Torts* in the context of false light invasion of privacy and did not apply it to intrusion upon seclusion, the subject of this appeal.

At any rate, Comment b to Section 652I merely reflects what we have already discussed: under the common law, when a party to an action such as a tort claim died, the action abated. *Timmins*, 310 S.W.3d at 840. But the state of the law changed when our legislature enacted the statute now codified at Tennessee Code Annotated section 20-5-102.

In pertinent part, section 20-5-102 says: "No civil action commenced, whether founded on wrongs or contracts, . . . shall abate by the death of either party, but may be revived" and adds: "nor shall any right of action arising hereafter based on the wrongful act or omission of another . . . be abated by the death of the party wronged; but the right of action shall pass . . . ." Tenn. Code Ann. § 20-5-102. Here, the parties do not dispute that the Plaintiff's intrusion upon seclusion claim is a "civil action" that is "founded on wrongs." *Id.* Dictionaries of the era when the statute was enacted define "wrong" as "[a]ny damage or injury contrary to right," or "[a]n injury, . . . , a tort, . . . a violation of right." 2 Thomas Edlyne Tomlins, *The Law-Dictionary* (London, Thomas Colpitts Granger ed., 4th ed. 1835) (bit.ly/3XnyFeN) (hereinafter Tomlins, *The Law-Dictionary*); 2 John Bouvier, *Law Dictionary* 505 (Philadelphia, T. & J.W. Johnson 1839) (bit.ly/41DV08X) (hereinafter "Bouvier, *Law Dictionary*"). *See McNabb v. Harrison*, No. E2022-01577-SC-R11-CV, 2025 WL 730065, at *3 (Tenn. Mar. 7, 2025) (citation omitted) (noting that, to interpret

older statutes and constitutional provisions, we consult dictionaries from the period of enactment)).

The wrong alleged here is the intrusion upon Ms. Jones's right to seclusion. The plain language in section 20-5-102 states that the Plaintiff's claim shall not abate, absent a statutory exception.

*Statutory Exception for Wrongs Affecting Character*

As noted above, section 20-5-102 includes such an exception. The exception carves out "actions for wrongs affecting the character of the plaintiff." Tenn. Code Ann. § 20-5-102. Such actions are governed by the common law and abate upon the death of the claimant.

Life Care contends that this statutory exception applies here because the tort of intrusion upon seclusion is in effect an action for "wrongs" that "affect[] the character" of the person whose privacy was invaded. Tenn. Code Ann. § 20-5-102. For that reason, Life Care insists, Plaintiff's action abated upon Ms. Jones's death.

At the outset, we note that Tennessee courts recognize intrusion upon the seclusion of another as an actionable tortious invasion of privacy. *See Givens v. Mullikin ex rel. Est. of McElwaney*, 75 S.W.3d 383, 411 (Tenn. 2002), *statutorily abrogated on other grounds*, *as recognized in Willeford v. Klepper*, 597 S.W.3d 454, 462 (Tenn. 2020); *Harris v. Horton*, 341 S.W.3d 264, 271 (Tenn. Ct. App. 2009), *overruled on other grounds by Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 n.6 (Tenn. 2012); *Roberts v. Essex Microtel Assocs.*, *II, L.P.*, 46 S.W.3d 205, 210–11 (Tenn. Ct. App. 2000).

To determine whether the statutory exception in section 20-5-102 encompasses intrusion upon seclusion, we begin with its text, "actions for wrongs affecting the character of the plaintiff." Tenn. Code Ann. § 20-5-102.[15] In this sense, the word "action" means "a legal demand of one's right, or . . . a suit given by law for the recovery of that which is due." 1 Bouvier, *Law Dictionary* 51 (1839) (bit.ly/3XDIntq). As noted above, the word "wrong" means a "[a]ny damage or injury contrary to right," or "a violation of right." 2 Tomlins, *The Law-Dictionary*, *supra*; 2 Bouvier, *Law Dictionary*, *supra*, at 505. Thus, the

---

[15] The parties have not cited any other jurisdiction with a similar exception to its survival statute for actions on "wrongs affecting the character of the plaintiff," and we have found none. Alaska's survival statue has an exception for actions for "defamation of character," *see* Alaska Stat. Ann. § 09.55.570 (West 2023), but we found no cases analyzing the exception with respect to intrusion upon seclusion.

suit or legal demand must be for damage or injury for a violation of the plaintiff's legal right.

The statutory exception applies only to judicial proceedings for wrongs "affecting the character" of the plaintiff. The word "affect" means "[t]o act upon; to produce an effect or change upon." 1 Noah Webster, *An American Dictionary of the English Language* (New York, S. Converse 1828) (bit.ly/3QXHIiK).[16] "Character" is defined as "the peculiar qualities, impressed by nature or habit on a person, which distinguish him from others. . . [and] . . . distinguished or good qualities; those which are esteemed and respected; and those which are ascribed to a person in common estimation." *Id*. (bit.ly/4c40QVY).[17]

If the word "wrong" in section 20-5-102 means "damage or injury contrary to right," or a "violation of right," then textual analysis of the statute requires us to next describe the plaintiff's legal right in an intrusion upon seclusion action.[18] *See Wrong*, 2 Tomlins, *The Law-Dictionary, supra*; *Wrong*, 2 Bouvier, *Law Dictionary*, *supra*, at 505. As noted above, this Court recognized in *West* that the "concept of the right to privacy" under the common law is rooted in an influential law review article that described "the right to be let alone." 53 S.W.3d at 642 (citing Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193, 196 (1890)).[19]

Here, Ms. Jones was not alone in her own home when the video by Life Care's CNA was made. Instead, she was in a facility owned by Life Care, in the presence of Life Care staff authorized to help her bathe. But, depending on the circumstances, a claimant for intrusion upon seclusion may be able to assert a "right to be let alone" even where she was *not* alone in her own home. As the tort is widely recognized, a defendant may be held liable if the intrusion was "into a private place or . . . a private seclusion that the plaintiff has thrown about his person or affairs." *Givens*, 75 S.W.3d at 412 (quoting *Restatement*

---

[16] The word is "often used in the sense of acting injuriously upon persons and things." *Affect*, Black's Law Dictionary (Deluxe 6th ed. 1990).

[17] This dictionary does not have page numbers, so we provide the online link for the word "character."

[18] "It is a fundamental principle in the law of torts that there must exist a legal right that has been violated in order to warrant redress." Stuart M. Speiser et al., 1 *American L. of Torts* § 1:8, Westlaw (database updated Feb. 2025) (citations omitted).

[19] *West* recognized this right under the common law of tort, 53 S.W.3d at 642, not under the Tennessee Constitution.

*(Second) of Torts* § 652B cmt. c).[20] The right violated "enables the right holder to fully participate in society and still exercise the right to privacy" by "empower[ing] protected persons to decide who may have access to one's private spaces and who is not allowed to such spaces." Aftab, *supra* note 14, at 46. *See generally*, J. Thomas McCarthy & Roger E. Schechter, *Intrusion Form of Privacy—Defining* Intrusion, and *Intrusion Form of Privacy—Relative* Privacy, in *1 Rights of Publicity and Privacy* §§ 5:89, 5:98 (2d ed. 2024).

This description of the claimant's legal "right to be let alone"—beyond isolation in her own home—is demonstrated in the illustrations and cases cited by section 652B of the *Restatement (Second) of Torts*. *See, e.g.*, *Restatement (Second) of Torts* § 652B illustrations 1[21] and 7.[22] *See also Berthiaume's Est. v. Pratt*, 365 A.2d 792, 795 (Me. 1976) (dying patient photographed in his hospital bed by his physician, over indications by patient he did not want to be photographed and express protest by patient's wife) (cited in reporter's note to comment b to *Restatement (Second) of Torts* § 652B); *Am. Guarantee & Liab. Ins. Co. v. 1906 Co.*, 273 F.3d 605, 614 (5th Cir. 2001) ("voyeuristic" male employee who surreptitiously videotaped female customers in dressing room committed intrusion

---

[20] The comments to section 652B of the *Restatement (Second) of Torts* caution:

> The defendant is subject to liability under the rule stated in this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs. Thus there is no liability for the examination of a public record concerning the plaintiff, or of documents that the plaintiff is required to keep and make available for public inspection. Nor is there liability for observing him or even taking his photograph while he is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye. Even in a public place, however, there may be some matters about the plaintiff, such as his underwear or lack of it, that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters.

*Restatement (Second) of Torts* § 652B cmt. c.

[21] A, a woman, is sick in a hospital with a rare disease that arouses public curiosity. B, a newspaper reporter, calls her on the telephone and asks for an interview, but she refuses to see him. B then goes to the hospital, enters A's room and over her objection takes her photograph. B has invaded A's privacy.

*Restatement (Second) of Torts* § 652B cmt. b, illus. 1.

[22] A, a young woman, attends a 'Fun House,' a public place of amusement where various tricks are played upon visitors. While she is there a concealed jet of compressed air blows her skirts over her head, and reveals her underwear. B takes a photograph of her in that position. B has invaded A's privacy.

*Restatement (Second) of Torts* § 652B cmt. c, illus. 7.

upon seclusion) (cited by *Restatement (Second) of Torts* § 652B). Here, even though Ms. Jones was so cognitively impaired that she had to live among employees in a skilled-care facility, she nevertheless had the right not to involuntarily have her nude body put on display. And she retained that right irrespective of her character. Thus, the "right" that is violated in an intrusion upon seclusion claim does not implicate the character of the plaintiff.

In analyzing whether a claim falls within the character exception to the survival statute, our Court has considered multiple aspects of the claim, such as whether bad character can be a defense to the action. *See, e.g.*, *Weeks v. Mays*, 10 S.W. 771, 771–72 (Tenn. 1889) (holding that claim abated because "the bad character of the plaintiff" was a potential defense); *Hullett v. Baker*, 49 S.W. 757, 758 (Tenn. 1899).

Consequently, we also consider the elements of the tort, that is, what the plaintiff is required to prove, and whether the plaintiff's bad character may be a defense. In *Givens*, the Court described the elements of intrusion upon seclusion as: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." 75 S.W.3d at 411 (quoting *Roberts, II, L.P.*, 46 S.W.3d at 211–12 (quoting *Restatement (Second) of Torts* § 652B)). As mentioned above, the defendant may be held liable "when he has intruded into a private place or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." *Id.* at 412 (quoting *Restatement (Second) of Torts* § 652B cmt. c).

As can be seen, proof of these elements revolve around whether the defendant intentionally "intruded into" the claimant's "private place" or "otherwise invaded a private seclusion" that the claimant had "thrown about his person or affairs," and whether "the intrusion would be highly offensive to a reasonable person." *Id.* at 411–12 (quoting *Restatement (Second) of Torts* § 652B cmt. a & cmt. c). The plaintiff need not present proof of either publication or use of the information acquired by the tortfeasor. "No especial publicity needs to be given to the plaintiff or to the plaintiff's affairs . . . ." *Id.* at 411 (citing *Restatement (Second) of Torts* § 652B cmt. a)). *See also Roberts*, 46 S.W.3d at 210 (quoting *Restatement (Second) of Torts* § 652B cmt. b.).[23]

In this way, intrusion upon seclusion contrasts with defamation and libel, actions for "wrongs" that our courts have held fall within the character exception to the survival

---

[23] Even if there is publicity, damages for this tort "flow from the intrusion, not the later publication." *Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 597 (N.D. Ill. 2021) (citation omitted). However, "publication can increase" the damages of the claimant. J. Thomas McCarthy & Roger E. Schechter, *Intrusion form of privacy*, 1 Rights of Publicity and Privacy § 5:87 (2d ed.).

statute. *See Benton*, 130 S.W.2d at 107 (cause of action for libel abated by the death of victim and surviving wife cannot maintain action); *Akers v. Akers*, 84 Tenn. 7, 11 (1885) (holding that "original alleged tort" of libel "unquestionably died with the defendant" under character exception to survival statute); *Bolin v. Stewart*, 66 Tenn. 298, 299 (1874) (commenting that "[l]ibel and slander unquestionably fall within the definition of the excepted cases in the statutes" because those claims "are brought directly and solely to recover damages for defamation of character"). *See also* Warren & Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. at 197 (contrasting defamation with privacy rights such as intrusion upon seclusion).[24]

In short, for intrusion upon seclusion, the plaintiff need not prove that the defendant's violation of her right affected, that is, "produce[d] an effect or change upon," the plaintiff's character. *Affect*, 1 Noah Webster, *An American Dictionary of the English Language*, *supra*. Nor can the plaintiff's character provide the defendant with a defense to the claim.

Of note, the analysis of whether an action is "for wrongs affecting the character of the plaintiff" under the exception in section 20-5-102 does not focus on the facts in a given case. Instead, it considers the legal right of the plaintiff that is allegedly violated and what the plaintiff must prove. *See Wrong*, 2 Tomlins, *The Law-Dictionary*, *supra*; *Wrong*, 2 Bouvier, *Law Dictionary*, *supra*, at 505. Many cases of intrusion upon seclusion incidentally involve facts in which the private circumstances of the plaintiff could arguably

---

[24] Warren and Brandeis explained:

> Owing to the nature of the instruments by which privacy is invaded, the injury inflicted bears a superficial resemblance to the wrongs dealt with by the law of slander and of libel, while a legal remedy for such injury seems to involve the treatment of mere wounded feelings, as a substantive cause of action. The principle on which the law of defamation rests, covers, however, a radically-different class of effects from those for which attention is now asked. It deals only with damage to reputation, with the injury done to the individual in his external relations to the community, by lowering him in the estimation of his fellows.

Warren & Brandeis, *supra*, at 197.

reflect on his character.[25] Many do not.[26] The character exception applies only where the action is for the type of wrong that "*necessarily* involves and affects the character of the plaintiff." *Hullett*, 49 S.W. at 758 (emphasis added).[27]

In sum, for an intrusion upon seclusion action, the plaintiff's legal right does not involve her character; evidence of the plaintiff's alleged low moral character provides no defense to the claim; and the plaintiff need not prove that the defendant's violation of her right produced an injurious effect on the plaintiff's character. Therefore, an action for intrusion upon seclusion is not one "for wrongs affecting the character of the plaintiff" and the exception to the survival statute does not apply to the Plaintiff's claim against Life Care. Tenn. Code Ann. § 20-5-102.

*Harris v. Horton*

Life Care also argues that the opinion of our Court of Appeals in *Harris v. Horton* indicates that Plaintiff's intrusion upon seclusion claim does not survive Ms. Jones's death. 341 S.W.3d 264, 271 (Tenn. Ct. App. 2009), *overruled on other grounds by Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 n.6 (Tenn. 2012). In that case, a man died in a motor vehicle accident. *Id.* at 266. First responders took photographs of the accident scene, including the deceased man's lifeless body. *Id.* A paramedic later showed the photographs to students in a driver's education class, to show the dangers of reckless driving. *Id.*

---

[25] *See*, *e.g.*, *Roberts*, 46 S.W.3d at 207 (tortfeasor hotel desk clerk provided police driver's license information of victim, who was questioned as a possible criminal suspect and taken to police headquarters in handcuffs); *State v. Ferrari*, 731 A.2d 1225, 1226 (N. J. Super. Ct. App. Div. 1999) (police officer gained access to victims' property, which was listed for sale, by feigning interest in purchasing and touring with listing agent, and observed marijuana in the home in plain view); *Love v. S. Bell Tel. & Tel. Co.*, 263 So. 2d 460, 462 (La. Ct. App.) (tortfeasor had locksmith gain access to victim's home, where they observed victim very drunk) (cited in Reporter's Note to *Restatement (Second) of Torts* § 652B cmt. b), *writ denied*, 266 So. 2d 429 (Mem) (La. 1972).

[26] *See, e.g.*, *Am. Guarantee & Liab. Ins. Co.*, 273 F.3d at 612–15 (male employee surreptitiously videotaped female customers in dressing room) (cited by *Restatement (Second) of Torts* § 652B). *Berthiaume's Est.*, 365 A.2d at 794 (physician took photographs of dying patient over protests by patient and wife) (cited in reporter's note to comment b to *Restatement (Second) of Torts* § 652B). *See generally* Prosser, *Privacy*, *supra*, at 389–392 (citing examples).

[27] We note that our Court of Appeals, in *Stockdale v. Helper*, No. M2022-00846-COA-R3-CV, 2024 WL 2045341, at *6 (Tenn. Ct. App. May 8, 2024), concluded that an action for tortious interference with a business relationship and prospective business relationships abated because it was an action "for wrongs affecting the character of the plaintiff" under section 20-5-102. The analysis of the intermediate appellate court was based on particular facts in that case that could be construed as reflecting on the plaintiff's character. *Id*. at *5. To the extent that the intermediate appellate court in *Stockdale* relied on the specific facts in that case and not the nature of the "wrong," we disagree with its analysis.

In *Harris*, the deceased man's family learned that the photographs had been shown and filed a lawsuit asserting claims for invasion of privacy, based on intrusion upon seclusion and public disclosure of private facts. *Id.* at 267. The trial court dismissed the claims for invasion of privacy on the basis that the right of privacy is a personal right that lapses upon death and cannot be asserted by family members. *Id.* at 268. On appeal, the Court of Appeals commented that "[t]he trial court correctly noted that the right to privacy is a personal right in Tennessee" that, under *West*, cannot be asserted by an individual's family after his death. *Id.* at 271 (citing *West*, 53 S.W.3d at 648 (citing *Restatement (Second) of Torts* § 652I cmt. a–c.)).

Based on that passage, Life Care argues that the Court of Appeals in *Harris* "necessarily acknowledges that the holding in *West* and the *Restatement (Second) of Torts* 652I also apply to intrusion upon seclusion claims." Going further, Life Care asserts that "*Harris* suggests that a claim for invasion of privacy based on intrusion upon seclusion also cannot be revived after the death of the injured party."

Life Care ignores the context in *Harris*. The *Harris* court explained that the decedent's family sought to "assert *their own* right of privacy with respect to the photographs of [the deceased man's] body," so the court did not need to consider whether family could continue to assert the decedent's claim after his death. *Id.* (emphasis added). Unlike the instant case, the plaintiffs in *Harris* filed their lawsuit—asserting their own privacy interests—after their family member's death. Consequently, there was no need in *Harris* to address the survival statute, and the language Life Care quotes from *Harris* has no bearing on our decision in this case.

In sum, then, under the plain language in Tennessee Code Annotated section 20-5-102, the "character" exception in the survival statute does not apply, and the Plaintiff's claim for intrusion upon seclusion did not abate upon the death of Ms. Jones. We affirm the ruling of the Court of Appeals on that issue. All other issues raised by the parties are either waived or pretermitted. We remand the case to the trial court for proceedings consistent with this Opinion.

## CONCLUSION

For the reasons set forth above, we affirm the ruling of the Court of Appeals that the Plaintiff's claim for intrusion upon seclusion did not abate upon the death of Ms. Jones pursuant to Tennessee Code Annotated section 20-5-102. All other issues raised by the parties are either waived or pretermitted. We remand to the trial court for proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellant Life Care Centers of America, Inc. d/b/a Life Care Center of Tullahoma, for which execution may issue if necessary.

    s/Holly Kirby, Chief Justice
HOLLY KIRBY, CHIEF JUSTICE